# IN THE SUPREME COURT OF TEXAS

No. 11-0589

IN RE ALLCAT CLAIMS SERVICE, L.P. AND JOHN WEAKLY, RELATORS

ON PETITION FOR WRIT OF MANDAMUS

**Argued October 24, 2011**

JUSTICE JOHNSON delivered the opinion of the Court, in which CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, JUSTICE WAINWRIGHT, JUSTICE MEDINA, JUSTICE GREEN, and JUSTICE GUZMAN joined.

JUSTICE WILLETT filed an opinion concurring in part and dissenting in part, in which JUSTICE LEHRMANN joined.

In this original proceeding Allcat Claims Service, L.P., a limited partnership, and one of its limited partners seek an order directing the Comptroller to refund franchise taxes Allcat paid that were attributable to partnership income allocated, but not distributed, to its natural-person partners. Allcat claims it is entitled to a refund for two reasons. First, the tax facially violates Article VIII, Section 24 of the Texas Constitution because it is a tax on the net incomes of its natural-person partners that was not approved in a statewide referendum. Second, as applied by the Comptroller to Allcat and its partners, the franchise tax violates Article VIII, Section 1(a) of the Constitution, which requires taxation to be equal and uniform. We hold that: (1) the tax is not a tax imposed on

the net incomes of the individual partners, thus it does not facially violate Article VIII, Section 24;

and (2) we do not have jurisdiction to consider the equal and uniform challenge.

## I. Background

### A. The Bullock Amendment and the Franchise Tax

In 1993 Texas voters adopted Article VIII, Section 24 of the Texas Constitution, frequently

referred to as the Bullock Amendment.[1]  *See* Tex. S.J. Res. 49, §§ 1–2, 73d Leg., R.S. (1993)

(adopted Nov. 2, 1993).  Section 24 provides in relevant part that

> [a] general law enacted by the legislature that imposes a tax on the net incomes of
> natural persons, including a person's share of partnership and unincorporated
> association income, must provide that the portion of the law imposing the tax not
> take effect until approved by a majority of the registered voters voting in a statewide
> referendum held on the question of imposing the tax.

TEX. CONST. art. VIII, § 24(a).

A decade later a Travis County district court determined that the manner in which Texas

funded its public schools was unconstitutional.  *Neeley v. West Orange-Cove Consol. Indep. Sch.*

*Dist.*, 176 S.W.3d 746, 753–54 (Tex. 2005).  The court enjoined further state funding of the schools,

but stayed the effect of its injunction until October 1, 2005, in order to give the Legislature time to

cure the constitutional deficiencies.  *Id.*  The state defendants[2] appealed, and this Court was "[o]nce

again . . . called upon to determine whether the funding of Texas public schools violates the Texas

Constitution."  *Id.* at 751.  We issued our opinion on November 22, 2005 and held that the State's

---

[1] So called after Lt. Gov. Bob Bullock who is widely credited with having taken the lead in authoring the amendment.

[2] Hon. Shirley Neeley, Texas Commissioner of Education; the Texas Education Agency; Hon. Carole Keeton Strayhorn, Texas Comptroller of Public Accounts; and the Texas State Board of Education.

system for financing public schools violated the Texas Constitution. We also changed the effective date of the district court's injunction to June 1, 2006. *Id.* at 796–99.

After the Travis County district court rendered its judgment in November 2004, and while the appeal was pending in this Court, the state actively worked on a different approach to funding public education. The 79th Legislature considered alternative methods of funding in its regular session and in two special sessions that lasted into August 2005. During this same period, the Governor also established the Texas Tax Reform Commission to study how to "modernize [Texas's] tax system and provide long-term property tax relief as well as sound financing for public schools." Press Release, Office of the Governor, Gov. Perry Names 24-Member Texas Tax Reform Commission (Nov. 4, 2005), *available at* http://governor.state.tx.us/news/appointment/5077/. The Commission held its first meeting the day before we issued *West Orange-Cove*.

In the months following our *West Orange-Cove* decision the Commission conducted hearings around the state. Based on its study, research, and those hearings the Commission identified four main concerns with the State's tax system: (1) property taxes were too high; (2) taxes should be as broad and as low as possible; (3) schools should be the priority for state funding; and (4) the State's property taxes make it difficult to attract businesses without substantial incentives. *See* REPORT OF THE TEXAS TAX REFORM COMMISSION, *Tax Fairness: Property Tax Relief for Texans* 16 (2006), *available at* http://govinfo.library.unt.edu/ttrc/files/TTRC_report.pdf. The Commission's proposals included increasing the number of business forms subject to the franchise tax, which is the State's business tax. *Id.* at 18. The Commission noted that

3

[f]or nearly a century the [franchise] tax has been applied to corporations. The original purpose of the franchise tax — and that which the Commission finds is still valid — was to collect a modest levy in return for the tremendous value afforded to businesses that chose to benefit from a state-provided liability shield. However, the recent spread of new business forms such as limited-liability partnerships have tapped the state's protections previously available only to corporations while avoiding the very levy designed to reflect the value of that protection. Tax-free status has thus been secured by many firms, to the competitive detriment of those remaining in corporate form.

*Id.*

As part of the effort to provide lasting property tax relief, establish a stable and long-term source of funding for public schools, and meet the June 1, 2006 deadline set in *West Orange-Cove*, the 79th Legislature, in its third called session, enacted several amendments to the Texas Tax Code. *See* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, §§ 1–27, 2006 Tex. Gen. Laws 1, 1–41 (the Act). The amendments were codified in Chapter 171 of the Tax Code and reflect many of the Commission's proposals, including its proposal to increase the number of business forms subject to the franchise tax. For the first time limited partnerships and certain other unincorporated associations were required to pay the tax. *See* TEX. TAX CODE §§ 171.0002, 171.001. It is these amendments and their application that are the subject of this proceeding against the Comptroller and the Attorney General (collectively, the Comptroller).

## B. Allcat's Claims

Allcat Claims Service, L.P. is a Texas limited partnership that provides adjusting services to property insurers. It inspects damaged property to determine the cause of the damage and the costs of repair. Allcat's limited partners include relator, John Weakly. For tax years 2008 and 2009 Allcat paid franchise taxes under protest, then filed two suits seeking a refund: this original

proceeding and a suit in the 201st District Court of Travis County. Here, Allcat seeks (1) an order requiring the Comptroller to refund that portion of the 2008 and 2009 franchise taxes it paid that are referable to its natural-person partners' shares of Allcat's income;[3] (2) a declaration that the franchise tax is unconstitutional to the extent it taxes partnership income allocable to its natural-person partners; (3) an injunction directing the Comptroller not to assess, enforce, or collect the franchise tax to the extent it applies to Allcat's income allocated to its natural-person partners; and (4) a declaration that the Comptroller's interpretation of certain franchise tax provisions violates Allcat's right to equal and uniform taxation under the Texas Constitution. Allcat asserts the same equal and uniform taxation claim in the Travis County suit "to preserve the claim in the event this Court decline[s] to exercise jurisdiction over [it]."

The first basis on which Allcat and Weakly (collectively, Allcat) rely for relief, which we reference as the facial challenge, is that the amendments to the franchise tax statutes violate Section 24 of the Constitution because their effect is to impose an income tax on the net incomes of natural persons, despite the fact that the tax has not been approved in a statewide referendum. The second basis, which we reference as the as-applied challenge, is not that the franchise tax statutes are unconstitutional, but rather that the Comptroller's interpretation and application of them violate the equal and uniform taxation clause of the Texas Constitution. *See* TEX. CONST. art. VIII, § 1. Allcat

---

[3] Allcat at first sought relief as to all of the taxes it paid. It later limited the relief it sought.

also seeks attorney's fees pursuant to the Declaratory Judgments Act (DJA). *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011.[4]

## II. The Facial Challenge

## A. Jurisdiction

The jurisdiction of all Texas courts, including this Court, derives from the Texas Constitution and state statutes. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (per curiam). Absent an express constitutional or statutory grant, we lack jurisdiction to decide any case. *Id.*

The Constitution is silent about taxpayer suits, but Texas statutes have long vested our courts with the responsibility to adjudicate these disputes. Under applicable statutory provisions, which are not challenged by Allcat, taxpayer suits contesting either (1) the validity of a state tax or (2) the authority of the public official charged with the assessment, enforcement, or collection of the tax, must be brought in a Travis County district court. *See*, *e.g.*, TEX. TAX CODE §§ 112.001 ("The district courts of Travis County have exclusive, original jurisdiction of a taxpayer suit brought under this chapter."); *id.* § 112.051 (requiring that a person must pay the tax in question before bringing a suit "contend[ing] that the tax or fee is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee"); *id.* § 112.101(a) (providing that injunctive relief may be issued against the Comptroller prohibiting her assessment or collection of a tax). In contrast to the general provisions of the Tax Code prescribing jurisdiction

---

[4] *Amicus* briefs supporting Allcat's position were submitted by Niki Laing, CPA; Keller Haslett Storage Ltd.; Austin Analytical, LLC; Yacktman Asset Management Co.; NSBMA, LP; Cherry Creek Plaza Partnership Ltd.; Nestle USA Inc.; the Corporate Housing Providers Association; Tyson Hoffer; Winning Investments, L.P.; and Winning Management, L.L.C. *Amicus* briefs supporting the Comptroller were submitted by the Texas Taxpayers and Research Association and the Texas Association of Realtors.

for taxpayer suits, the Act gives this Court original and exclusive jurisdiction over constitutional challenges to the franchise tax amendments:

> The supreme court has exclusive and original jurisdiction over a challenge to the constitutionality of this Act or any part of this Act and may issue injunctive or declaratory relief in connection with the challenge.

*See* Act § 24. We first address the Legislature's conferral of original jurisdiction on this Court.

Allcat argues that section 24 is a valid exercise of legislative authority under Article V, Section 3(a) of the Constitution and that the Court has statutory authority to issue certain extraordinary writs under section 22.002(c) of the Government Code. The Comptroller does not contest our jurisdiction but posits that to accept jurisdiction under Article V, Section 3(a), we must first overrule our decisions in *Love v. Wilcox*, 28 S.W.2d 515 (Tex. 1930) and *Lane v. Ross*, 249 S.W.2d 591 (Tex. 1952). She disagrees with Allcat's contention that section 22.002(c) is a valid source of our jurisdiction. For the reasons expressed below, we hold that we have jurisdiction under Article V, Section 3(a)[5] and that neither *Love* nor *Lane* stand as impediments.

The Constitution of 1891 gave the Supreme Court three types of jurisdiction: appellate jurisdiction, jurisdiction to issue writs, and original jurisdiction. The Court's appellate jurisdiction was described as follows:

> The Supreme Court shall have appellate jurisdiction only except as herein specified, which shall be coextensive with the limits of the State. Its appellate jurisdiction shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction under such restrictions and regulations as the Legislature may prescribe. Until otherwise provided by law the appellate jurisdiction of the Supreme Court shall extend to questions of law arising in the cases in the Courts of Civil

---

[5] The Comptroller also suggests that Article V, Section 8 may authorize the Legislature to confer original jurisdiction on this Court. We need not address that position.

7

Appeals in which the Judges of any Court of Civil Appeals may disagree, or where the several Court of Civil Appeals may hold differently on the same question of law or where a statute of the State is held void.

TEX. CONST. art. V, § 3 (1891). The next sentence described the Court's writ jurisdiction:

The Supreme Court and the Justices thereof shall have power to issue writs of habeas corpus, as may be prescribed by law, and under such regulations as may be prescribed by law, the said courts and the Justices thereof may issue the writs of mandamus, procedendo, certiorari and such other writs, as may be necessary to enforce its jurisdiction.

*Id.* Section 3 then described the Court's original jurisdiction:

The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State.

*Id.*

In *Love* we held that the sentence last quoted limited the Legislature's authority to confer original jurisdiction on the Court. 28 S.W.2d at 522. The statute involved in that case attempted to give the Court "the power, or authority, or jurisdiction, to issue the Writ of Mandamus, or any other Mandatory or compulsory Writ or Process" against certain political party officials. *Id.* We concluded that "the Constitution limits the original jurisdiction of the court to the issuance of writs of quo warranto and mandamus," and that "so much of the legislative act under examination as attempts to confer upon the Supreme Court the power to issue 'any other mandatory or compulsory

8

writ or process' save the writ of mandamus, is violative of the Constitution, and is therefore void."[6]

*Id.* The Court reaffirmed *Love* in *Lane*. 249 S.W.2d at 593.

In 1981, Article V was amended, principally to confer jurisdiction over criminal appeals on the Courts of Civil Appeals, changing them to the Courts of Appeals. Act of May 25, 1979, 66th Leg., R.S., S.J. Res. No. 36, § 3 (adopted at Nov. 4, 1980 election). Section 3 was also amended to its current form. *Id.* The first sentence referring to appellate jurisdiction was replaced by these two, describing the Court's jurisdiction generally:

> The Supreme Court shall exercise the judicial power of the state except as otherwise provided in this Constitution. Its jurisdiction shall be coextensive with the limits of the State and its determinations shall be final except in criminal law matters.

TEX. CONST. art. V, § 3(a). The other two lengthy sentences of the prior provision describing the Court's appellate jurisdiction became one short one:

> Its appellate jurisdiction shall be final and shall extend to all cases except in criminal law matters and as otherwise provided in this Constitution or by law.

---

[6] We also noted that there were other limitations on the Legislature's authority to confer original jurisdiction on the Supreme Court:

> This court has heretofore laid down certain limitations on the power of the Legislature to specify classes of cases which may be brought within the court's original jurisdiction. One is that the right to the duty required to be performed by mandamus shall not be 'dependent upon the determination of any doubtful question of fact.' *Teat v. McGaughey*, 85 Tex. 486, 487, 22 S.W.302, 303 [1893]. Another limitation is that the writ of quo warranto or mandamus be a proper or necessary process for enforcement of the right asserted. *Pickle v. McCall*, 86 Tex. 218, 24 S.W. 265 [1893]. A third is there must be some strong and special reason for the exercise of this extraordinary original jurisdiction by a court designed primarily as the court for the correction by appellate review of errors of inferior courts in determining questions of law. In this connection, the court found no objection to the Legislature requiring it to exercise original jurisdiction by mandamus, where the proceeding 'involves questions which are of general public interest and call for a speedy determination.' *Betts v. Johnson*, 96 Tex. 363, 73 S.W. 4, 5 [1903].

28 S.W.2d at 519.

*Id.* The provisions describing the Court's writ jurisdiction and original jurisdiction were not changed.

The provision at issue in this case provides that the Court "has exclusive and original jurisdiction over a challenge to [its] constitutionality." Act § 24. It also authorizes the Court to "issue injunctive or declaratory relief in connection with the challenge." *Id.* If the grant of jurisdiction or the relief authorized in the statute exceeds the limits of Article V, Section 3(a), then we simply exercise as much jurisdiction over the case as the Constitution allows, as we did in *Love*. *See* 28 S.W.2d at 522. But, in *Lane*, we held that while "this court has no original jurisdiction to issue a writ of injunction . . . . [i]n cases in which this court's jurisdiction to issue a writ of mandamus has attached the court necessarily has the correlative authority to issue a writ of injunction to make the writ of mandamus effective." 249 S.W.2d at 593. The same may be said of declaratory relief.

The Act clearly expresses legislative intent that the Court consider the constitutionality of its provisions. In this matter, mandamus is a "proper or necessary process for enforcement of the right asserted" because Allcat seeks an order directing the Comptroller to refund part of the taxes it paid. *Love*, 28 S.W.2d at 519. That being so, we necessarily have the correlative authority to provide declaratory and injunctive relief as appropriate.

The Comptroller argues that this suit cannot be considered a mandamus proceeding over which the Court has original jurisdiction under Article V, Section 3(a) because mandamus relief would never be appropriate. She contends that an official does not abuse her discretion by enforcing a statute that is later determined to be unconstitutional. But in *LeCroy v. Hanlon*, 713 S.W.2d 335

10

(Tex. 1986), we affirmed a judgment declaring a filing fee statute unconstitutional, granting mandamus relief against the district clerk, and issuing injunctive relief precluding the clerk from charging the unconstitutional filing fee. *Id.* at 337, 343; *see also Cramer v. Sheppard*, 167 S.W.2d 147, 156 (Tex. 1942) (mandamus issued directing the Comptroller to issue pay warrants after he refused to issue them based on his improper interpretation of the Constitution). In this matter, if Allcat is correct and the Act is unconstitutional, then the Act does not provide legal authority for the Comptroller to retain the taxes and Allcat will be entitled to mandamus directing a refund.

The Comptroller argues that if mandamus relief is appropriate in cases such as this, then any constitutional challenge can be brought initially in this Court. But as we explained in *Love* and *Lane*, Article V, Section 3(a) imposes a limit: legislative authorization and mandamus being a proper or necessary process for enforcement of the right asserted. For example, in a case the Comptroller cites, *Chenault*, the relators brought an original mandamus proceeding seeking "a declaration that the attorney occupation tax is unconstitutional, an injunction against the officials responsible for collecting the tax, and writs prohibiting enforcement of the tax." 914 S.W.2d at 141. The Court refused to consider the constitutional arguments, stating that "this action is not within the original jurisdiction granted to this Court by either the Texas Constitution or the Legislature." *Id.*

We conclude that section 24 of the Act serves as a specific, limited exception to the generalized provisions of the Tax Code that confer exclusive jurisdiction over suits such as Allcat's on the district courts of Travis County; it does not violate Article V, Section 3(a); and it gives this Court original, exclusive jurisdiction to consider the facial challenge to the Act's constitutionality in order to determine whether mandamus should issue directing the Comptroller to refund taxes that

11

Allcat paid under protest. We need not and do not address other arguments advanced by the parties regarding our jurisdiction over the facial challenge.

## B. Is the Tax Constitutional?

As an initial matter, we note Allcat contends that only Texas law applies to the issues presented. We agree. The Bullock Amendment and Texas partnership law, not some other law such as the federal Internal Revenue Code (IRC), control whether the Act violates the Texas Constitution.

Allcat insists that the franchise tax is, in effect, an income tax notwithstanding the Legislature's express statement to the contrary. *See* Act § 21 ("The franchise tax imposed by Chapter 171, Tax Code, as amended by this Act, is not an income tax . . . ."). It reasons that because the income of a partnership is allocated to each partner according to the partner's partnership interest, the Act taxes each partner's allocated share of Allcat's income. Allcat asserts that, in this manner, the franchise tax is a tax on the net incomes of its partners and violates the Bullock Amendment as to partners who are natural persons.

The Comptroller counters that the franchise tax is not an income tax because it can result in taxes due even if the entity loses money. She further argues that whether the tax is an income tax is irrelevant because Texas has adopted the entity theory for partnership law and a tax imposed on a limited partnership entity does not constitute a tax on the net incomes of the partnership's individual partners. Because it is dispositive, we begin with the Comptroller's second argument.

Under the aggregate theory of partnership law a partnership is not an entity separate and distinct from its individual partners. Rather, the "partnership" name or label is a convenient way of referring to the partners as a group. *See* 1 ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG

12

AND RIBSTEIN ON PARTNERSHIP § 1.03(a)–(b) (Release No. 31, 2011–12 Supp.). In contrast, under the entity theory of partnership law the partnership is an entity separate and distinct from its partners.[7] *Id.*

Although it has not always been so, Texas adheres to the entity theory. In 1961 the Legislature adopted the Texas Uniform Partnership Act (TUPA), TEX. CIV. STAT. ANN. art. 6132(b) which "lean[ed] heavily toward the entity idea." *Id.*, § 1, cmt. This Court recognized that the aggregate theory had been abandoned for most purposes with the TUPA's adoption:

> [under the aggregate theory] a partnership was considered to be an aggregate of individuals acting under contract . . . . However, after the adoption of [TUPA], a partnership was recognized as an entity legally distinct from its partners for most purposes. The entity theory of partnership is consistent with other laws permitting suit in the partnership name and service on one partner.

*Haney v. Fenley, Bate, Deaton & Porter*, 618 S.W.2d 541, 542 (Tex. 1981) (per curiam). Yet despite the TUPA, some courts continued to apply the aggregate theory in certain situations. *See*, *e.g.*, *Lawler v. Dallas Statler-Hilton Joint Venture*, 793 S.W.2d 27, 33–34 (Tex. App.—Dallas 1990, writ denied) (recognizing that Texas is "predominantly an entity theory state" but determining that under the TUPA there were sufficient aggregate features to a partnership for the court to apply the aggregate theory to an employment relationship).

---

[7] The practical application of these different approaches yields various consequences. For example, which theory a state embraces for its partnership law—aggregate or entity—can be determinative of whether a partner may be liable for embezzlement or improper use of partnership property. *Compare In re Leal*, 360 B.R. 231, 239–41 (Bankr. S.D. Tex. 2007) (applying Texas partnership law to conclude that a partner was liable to the partnership for conversion of partnership property because he did not have an individual interest in such property), *with State v. Birch*, 675 P.2d 246 (Wash. Ct. App. 1984) (upholding the trial court's dismissal of charges for embezzling partnership funds and providing that whether a state follows an aggregate or entity theory of partnership law is for the Legislature to decide). *See generally* BROMBERG at § 1.03(c) (identifying the aggregate and entity aspects of partnership law in specific areas).

Courts' application of the aggregate theory in certain contexts and the entity theory in others led to some confusion. So, "to allay previous concerns that stemmed from confusion as to whether a partnership was an entity or an aggregate of its members," the 73rd Legislature passed the Texas Revised Uniform Partnership Act (TRPA) in 1993 and thereby "unequivocally embrace[d] the entity theory of partnership by specifically stating . . . that a partnership is an entity distinct from its partners." TEX. REV. CIV. STAT. ANN. art. 6132b-2.01, Comment of Bar Committee—1993. The TRPA, codified in the Texas Business Organizations Code, plainly provides that "[a] partnership is an entity distinct from its partners," and "[a] partner is not a co-owner of partnership property." TEX. BUS. ORGS. CODE §§ 152.056, 154.001(c). Further, it is the partnership interest that is a partner's "personal property for all purposes." *Id.* § 154.001(a); *see also Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 855 (Tex. 2011) (noting that the general partner of a limited partnership is not an owner of the limited partnership's property). The same Legislature that adopted the TRPA also adopted the language in the Bullock Amendment. *See* Tex. S.J. Res. 49, §§ 1–2, 73d Leg., R.S. (1993) (adopted Nov. 2, 1993).[8]

In *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60 (Tex. 2008), we distinguished early Texas law that rejected the entity theory from modern practice. In doing so we quoted the following language from *Frank v. Tatum*:

---

[8] The TRPA originated in the 73rd Legislature as H.R. 273. The House passed H.R. 273 on April 19, 1993 and adopted the conference committee report on May 30. The Senate passed H.R. 273 with amendments on May 18 and adopted the conference committee report on May 29. Meanwhile, the Senate adopted the language of the Bullock Amendment pursuant to Senate Joint Resolution 49 on April 27, 1993 and adopted the related conference committee report on May 27, 1993. The House adopted Senate Joint Resolution 49 with amendments on May 21 and the conference committee report on May 28.

14

> It is a general rule that suits in courts can only be maintained by and against persons natural or artificial; that is, individuals or corporations. Unless otherwise provided by statute, a copartnership is not considered a person, and must sue and be sued by its members. . . . The rule that a copartnership must sue or be sued by its members is so universally recognized that there is no need for discussion.

*Id.* at 62 n.9 (quoting 25 S.W. 409, 409–10 (Tex. 1894)). We then contrasted that view with more current law under which a partnership is an entity separate from the partners:

> In *M Sys. Stores, Inc. v. Johnston*, 124 Tex. 238, 76 S.W.2d 503, 504 (1934), we reiterated that "a partnership is not a legal entity, like a corporation." Much later, in *Haney v. Fenley, Bate, Deaton & Porter*, 618 S.W.2d 541, 542 (Tex.1981), we observed that "after the adoption of the Texas Uniform Partnership Act, TEX. REV. CIV. STAT. ANN. art. 6132b, effective January 1, 1962, a partnership was recognized as an entity legally distinct from its partners for most purposes." *See also* TEX. R. CIV. P. 28 ("Any partnership . . . may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right. . . .").

*Id.*

Allcat urges that the separate entity concept applies only in contexts unrelated to net income, such as property ownership and enforcement of liability. Citing *Destec Energy, Inc. v. Houston Lighting & Power Co.*, 966 S.W.2d 792 (Tex. App.—Austin 1998, no pet.), it argues that Texas has not adopted the entity approach for partnership income, thus partnership income is divided into shares essentially owned by the partners regardless of whether the income shares are actually distributed to the partners. We disagree with Allcat's position and its reading of *Destec*. In *Destec* the court of appeals rejected the aggregate theory of partnership law in deference to the Legislature's adoption of the entity theory in the TRPA. *Id.* at 795–96. That same court recently reviewed the nature of partnership income under the entity theory. *See Smith v. Grayson*, No. 03-10-00238-CV, 2011 WL 4924073, at *5–*6 (Tex. App.—Austin Oct. 12, 2011, no pet. h.). In determining whether

15

partnership earnings retained by the partnership are separate property of a limited partner or community property of the partner and his wife, the court noted that "[p]artnership earnings are owned by the partnership prior to distribution to the partners and cannot be characterized as either separate or community property." *Id.* at *6. Rather, the limited partner's "right to receive his share of the profits is the only partnership right subject to characterization." *Id.* at *5.

Other courts of appeals have likewise rejected attempts to impose an aggregate theory of partnership law, given the express language of the TRPA. *See*, *e.g.*, *Bexar Appraisal Dist. v. Am. Opportunity for Housing-Perrin Oaks, L.L.C.*, No. 04-10-00278-CV, 2010 WL 4978099, at *3–*5 (Tex. App.—San Antonio Dec. 8, 2010, no pet.) (applying the entity theory to distinguish between the partnership and its partners to determine who could protest the rejection of the tax exempt status of certain property); *Simmons, Jannace & Stagg, L.L.P. v. Buzbee Law Firm*, 324 S.W.3d 833 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that a partnership law firm could not appear *pro se*); *Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433, 443 (Tex. App.—San Antonio 2001, pet. denied) (recognizing that "the Legislature unequivocally embraced the entity theory of partnership law in 1993").

Allcat also argues that section 152.202(a) of the Business Organizations Code (entitled "Credits of and Charges to Partner") should control over section 152.056 (entitled "Partnership as Entity"), thereby making partnership income an exception to the separate entity concept. Section 152.202(a) provides in relevant part: "Each partner is credited with an amount equal to . . . the partner's share of the partnership's profits." TEX. BUS. ORGS. CODE § 152.202(a). This provision, when read in context with section 153.206, providing how limited partnership profits and losses are

16

allocated, merely specifies that partnership profits are credited and allocated to the partner's partnership interest according to the partnership agreement or as otherwise provided under the TRPA. TEX. BUS. ORGS. CODE § 152.202(a), 153.206; *see also id.* § 153.003 (providing that the provisions of chapter 152 apply to limited partnerships if they are not inconsistent with chapter 153 of the TRPA).[9] The TRPA provides that partners have creditors' rights in regard to distributions of partnership profits, but it does not provide that allocations of partnership profits are property of, subject to the control of, or income to the separate partners. *See* TEX. BUS. ORGS. CODE § 153.207–.210; *see also Smith*, 2011 WL 4924073, at *5–*6; *Cleaver v. Cleaver*, 935 S.W.2d 491, 495 (Tex. App.—Tyler 1996, no writ). And the right to receive a distribution, even assuming it is authorized by the partnership, is subject to the partnership's ability to satisfy its liabilities. *See* TEX. BUS. ORGS. CODE § 153.210 (providing that distributions may not be made if, immediately after giving effect to the distribution, liabilities of the partnership will exceed the fair value of the partnership assets); *see also* TEX. BUS. ORGS. CODE § 153.105 (providing that rights of limited partners may be created only by (1) the certificate of formation; (2) the partnership agreement; (3) other sections of chapter 153; or (4) the other limited partnership provisions). Thus, under Texas law the allocation of partnership income or profits to a partner does not convert the amounts allocated into property of or income to the partner, and section 152.202(a) does not indicate a departure from the entity theory.

---

[9] Allcat's partnership agreement is not in the record. Neither party argues that its relevant terms differ from the TRPA's provisions. *See* TEX. BUS. ORGS. CODE § 152.002 ("To the extent that the partnership agreement does not otherwise provide, this chapter and the other partnership provisions govern the relationship of the partners and between the partners and the partnership.").

In support of its position, Allcat also references matters extraneous to the legislative history of the Bullock Amendment. Some of these pre-date and some post-date enactment of the Amendment. The most relevant are exemplified by a 1991 letter sent to then-Governor Ann Richards by twenty-two members of the senate. The letter stated that "[a] tax on partnership income . . . is really a tax on personal income that only applies to some persons." Letter from Members of the Texas Senate to Governor Ann Richards, *et al.*, (Jul. 23, 1991) (on file with Baylor University's Collections of Political Materials). This position, Allcat urges, provides the context in which the Amendment was adopted.

We agree that the Bullock Amendment must be construed in light of conditions existing at the time it was adopted. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995); *Jones v. Ross*, 173 S.W.2d 1022, 1024 (Tex. 1943). However, in construing the Texas Constitution, we "'ascertain and give effect to the plain intent and language of the framers of a constitutional amendment and of the people who adopted it.'" *Wilson v. Galveston Cnty. Cent. Appraisal Dist.*, 713 S.W.2d 98, 101 (Tex. 1986) (quoting *Gragg v. Cayuga Indep. Sch. Dist.*, 539 S.W.2d 861, 866 (Tex. 1976)). We presume the language of the Constitution was carefully selected, interpret words as they are generally understood, and rely heavily on the literal text. *See Harris Cnty. Hosp. Dist. v. Tomball Hosp. Auth.*, 283 S.W.3d 838, 842 (Tex. 2009) (citing *Stringer v. Cendant Mort. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000) and *Bouillion*, 896 S.W.2d at 148).

As we have often held, however, the most relevant consideration in construing a constitutional or statutory provision is its text. The permutations placed on that text by others, even those who urge its adoption, must ordinarily yield when the text's plain meaning says the opposite.

18

Political advocacy may influence votes on important legislative initiatives, but it cannot control a court's ultimate responsibility to decide the law that was finally enacted or adopted. Here, the letter to Governor Richards represents senators' opinions almost two years before the Legislature adopted the TRPA and approved the Bullock Amendment's language and submitted it to Texans for adoption. It represents but a subset of the Legislature and states views that may have changed in the two-year period of debate preceding the enactment of the TRPA and the submission of the Amendment to the voters. Indeed every one of the signatories who were still senators in the 73rd Legislature voted in favor of the TRPA. The passage of time, in conjunction with the plain language of the TRPA's text, forecloses any argument that the Legislature rejected any aspect of the entity theory of partnership law.

The materials Allcat references reflect a disdain for a state income tax on natural persons, absent voter approval, but none of the materials contradicts legislative intent to tax partnerships under the entity theory. The caption of Senate Joint Resolution 49 stated that the resolution "[p]ropos[ed] a constitutional amendment prohibiting a personal income tax without voter approval and dedicating the proceeds of the tax, if enacted, to education and property tax relief," and when the proposed amendment was submitted to the voters, it was described as "Proposition 4: The constitutional amendment prohibiting a personal income tax without voter approval and, if an income tax is enacted, dedicating the revenue to education and limiting the rate of local school taxes." Tex. S.J. Res. 49, 73d Leg., caption, § 3 (1993). The language is not ambiguous and, as such, opinions from senators, newspapers, or other sources cannot override the text approved by the Legislature. *See Tex. Dept. of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 117–18

19

(Tex. 2011) (recognizing that the Legislature's intent is best manifested by what it enacts); *Molinet v. Kimbrell*, ___ S.W.3d ___, (Tex. 2011) ("Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute . . . . The Legislature expresses its intent by the words it enacts."); *AT&T Commc'ns of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528–529 (Tex. 2006) ("[T]he statement of a single legislator, even the author and sponsor of the legislation, does not determine legislative intent."). Nor do they reflect intent by the voters to adopt something other than a constitutional amendment prohibiting a personal income tax without voter approval, and providing that if a personal income tax were to be enacted, revenues from it must be dedicated to education. Accordingly, we read the TRPA as stating without equivocation that partnership income remains property of the partnership entity until it is distributed.

Allcat further argues that the Bullock Amendment extends to instances in which a natural person's partnership income is taxed "indirectly." Allcat urges that the Bullock Amendment's partnership clause—"including a person's share of partnership and unincorporated association income"—becomes meaningless if it applies only when the franchise tax statute results in direct taxation of a partner for some part of partnership income, as is the case in the federal taxation scheme. *See* 26 U.S.C. § 701 ("A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities."). The substance of Allcat's argument is that regardless of whether Texas classifies partnership income and profits as partnership property (the entity theory) or property of the partners (the aggregate theory), the Bullock amendment constitutionally transforms

20

a natural-person partner's allocated share of partnership income into part of the person's "net income" and forbids applying the tax at either the partnership or individual level absent approval in a referendum. Again, we disagree.

When construing statutes we presume the Legislature intended them to comply with the Texas Constitution. TEX. GOV'T CODE § 311.021; *see also Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex. 1998) ("'Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with [the Constitution].'" quoting *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 715 (Tex. 1990)). And as previously noted, in construing amendments to the Texas Constitution we ascertain and give effect to the plain intent and language of the framers of the amendments and of the people who adopted them, beginning with and giving primacy to the language that was adopted. *See Wilson*, 713 S.W.2d at 101; *Gragg*, 539 S.W.2d at 866.

To review, Section 24(a) of the Constitution provides that voters must approve "[a] general law enacted by the legislature that imposes a tax on the net incomes of natural persons, including a person's share of partnership and unincorporated association income" before it becomes effective. TEX. CONST. art. VIII, § 24(a). The reference to partnership and unincorporated association income is an explanatory phrase modifying the phrase "the net incomes of natural persons." *Id.*; *see also* TEX. GOV'T CODE § 311.005(13) (defining the term "including" under the Code Construction Act as a term of enlargement). Allcat's argument proposes that the amount of partnership income allocated to a partner becomes the partner's "share" of partnership income once it is allocated, regardless of Texas law and regardless of whether partnership operations, expenses or losses were

21

to later reduce the allocated amount.  That argument would have weight if the partnership were not a separate entity, but it is.  Allcat does not argue that the TRPA violates either the Bullock Amendment or some other constitutional provision by making the partnership and its income an entity separate from its partners.  Nor does Allcat argue that either the Bullock Amendment or some other constitutional provision restricts Texas to particular taxation methodologies such as ones conforming to the federal income tax system.

Simply put, under Texas law the entity theory applies to partnership income and profits. Individual partners do not own any of either while they remain in the partnership's hands and have not been distributed to the partners.  *See*, *e.g.*, TEX. BUS. ORG. CODE § 152.056; *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010) ("[W]e must take statutes as we find them and first and primarily seek the Legislature's intent in its language.").  And while a partner's interest in the partnership represents the right to receive the partner's share of partnership profits when they are distributed, it does not follow that for purposes of the Texas franchise tax such right constitutes a partner's "share" of any partnership income or profits while the partnership retains the income and profits without having distributed any of them to the partner.[10]

---

[10] The Comptroller argues that use of the term "net income" shows that the Legislature is not prohibited from passing a tax on the gross incomes of natural persons.  She suggests that to the extent a person's share of partnership income is income at all, it merely amounts to a portion of the person's "gross income" which is not the subject of the Bullock Amendment.  The parties and *amici* advance competing arguments about whether the franchise tax is an income tax.  They cite authorities concluding that it is and authorities concluding that it is not.  For those concluding that it is not see Ga. Dep't of Rev., Individual FAQs, *available at* https://etax.dor.ga.gov/inctax/webfaq/faq-ind.aspx#texasmargin (last visited Nov. 16, 2011); Instructions for Maine Corporate Income Tax 2010 Form 1120ME, Line 4a, at 4, *available at* http://www.maine.gov/revenue/forms/corporate/ 2010/10_1120inst.pdf; Mass. Dep't of Rev., Directive No. 08-7 (Dec. 18, 2008); Minn. Rev. Notice No. 08-08 (Jul. 21, 2008); Pa. Dep't of Rev., Corp. Tax Bulletin 2008-05, (Dec. 1, 2008), *available at* http://pa.gov/portal/server.pt/document/910228/ct_bulletin_2008-05_pdf; Va. Tax Comm'r Ruling, Pub. Doc. No. 08-169 (Sept. 11, 2008).  For those concluding that it is see Cal. Franchise Tax Bd., Technical Advice Mem. 2011-03 (Apr. 13, 2011), *available at* http://www.ftb.ca.gov/law/Technical_Advice_Memorandums/2011/20110003.pdf; Kans. Dep't of Rev., Opinion Letter No. O-2008-004 (Sept. 2, 2008), *available at*

The Bullock Amendment prohibits the State from implementing, without voter approval, an income tax on the net incomes of natural persons, including a tax scheme yielding results similar to those of the federal income tax construct as related to partnerships. Under the federal construct, partnership income "flows through" to and is taxed to the partner. The IRC does not tax partnerships as entities, *see* 26 U.S.C. § 701, but instead taxes only the partners and defines a partner's gross income as including "his distributive share of the gross income of the partnership." 26 U.S.C. § 702(c). The federal law flow-through approach to partnership income "certainly represents the aggregate view [of partnerships]." BROMBERG at 1.03(c)(9). Chapter 171 of the Tax Code does not adopt the tax scheme of the IRC even though it draws from entries on certain federal tax forms as its method for determining the amount of franchise taxes a business owes.[11] Allcat's

---

http://rvpolicy.kdor.state.ks.gov/Pilots/Ntrntpil/IPILv1x0.NSF/ae2ee39f7748055f8625655b004e9335/e861583bab1c af27862574ba005eb8c3?OpenDocument (last visited Nov. 16, 2011); Mo. Dep't of Rev. Letter Ruling LR 5309 (Dec. 12, 2008), *available at* http://dor.mo.gov/rulings/show.php?num=5309 (last visited Nov. 16, 2011); S.C. Dep't of Rev., Rev. Rul. 09-10 (Jul. 17, 2009), *available at* http://www.sctax.org/NR/rdonlyres/B8314617-023F-4575-9C96-D9449EE53AAF/0/RR0910.pdf; Wisc. Tax Bulletin 156 at 7 (April 2008); Minutes of the August 2, 2006, Board Meeting on Potential FSP: Texas Franchise Tax, at 2–3, *available at* http://www.fasb.org/jsp/FASB/Page/08-02-06_texas_franchise_tax.pdf. Because the arguments do not affect our analysis, we do not address them.

[11] *See* TEX. TAX CODE § 171.1011. With respect to partnerships this section provides:

(c) Except as provided by this section, and subject to Section 171.1014, for the purpose of computing its taxable margin under Section 171.101, the total revenue of a taxable entity is: . . . .
 (2) for a taxable entity treated for federal income tax purposes as a partnership, an amount computed by:
  (A) adding:
   (i) the amount reportable as income on line 1c, Internal Revenue Service Form 1065;
   (ii) the amounts reportable as income on lines 4, 6, and 7, Internal Revenue Service Form 1065;
   (iii) the amounts reportable as income on lines 3a and 5 through 11, Internal Revenue Service Form 1065, Schedule K;
   (iv) the amounts reportable as income on line 17, Internal Revenue Service Form 8825;
   (v) the amounts reportable as income on line 11, plus line 2 or line 45,

position flies directly in the face of the TRPA's specification that partnership profits and losses are allocated to partners as a component of that partner's partnership interest and the partner's rights to a distribution from that property interest are limited to those of a creditor. TEX. BUS. ORGS. CODE §§ 152.202(a), 153.206–.207, 154.001(a). We reject it. The Bullock Amendment does not preclude the taxation of business entities for the privilege of doing business in Texas and taking advantage of the option to limit the liability of the owners of a business as Allcat does by means of the limited partnership structure.

We conclude that the franchise tax constitutes a tax on Allcat as an entity; it does not constitute a tax on the net income of Allcat's natural-person limited partners within the meaning of the Bullock Amendment. We hold that Allcat's facial challenge is without merit.

### III. The As-Applied Challenge

---

Internal Revenue Service Form 1040, Schedule F; and
(vi) any total revenue reported by a lower tier entity as includable in the taxable entity's total revenue under Section 171.1015(b); and
(B) subtracting:
(i) bad debt expensed for federal income tax purposes that corresponds to items of gross receipts included in Subsection (c)(2)(A) for the current reporting period or a past reporting period;
(ii) to the extent included in Subsection (c)(2)(A), foreign royalties and foreign dividends, including amounts determined under Section 78 or Sections 951-964, Internal Revenue Code;
(iii) to the extent included in Subsection (c)(2)(A), net distributive income from a taxable entity treated as a partnership or as an S corporation for federal income tax purposes;
(iv) to the extent included in Subsection (c)(2)(A), items of income attributable to an entity that is a disregarded entity for federal income tax purposes; and
(v) to the extent included in Subsection (c)(2)(A), other amounts authorized by this section . . . .

TEX. TAX CODE § 171.1011(c)(2).

24

Allcat does not directly attack the provisions of the Act by its as-applied challenge, but instead claims that the Comptroller's interpretation and enforcement of the franchise tax statutes violates its rights under the equal and uniform taxation clause of Article VIII, Section 1 of the Constitution. In other words, by its as-applied claim Allcat challenges the Comptroller's assessment, enforcement, and collection of the tax imposed by the Act. As we did with the facial challenge, we first address our jurisdiction.

Allcat's claim is subject to chapter 112 of the Tax Code which generally vests exclusive jurisdiction over tax suits in the district courts of Travis County. *See*, *e.g.*, TEX. TAX. CODE §§ 112.001, 112.051–.053, 112.101–.1011. As it does in its facial challenge, Allcat asserts that section 24 of the Act withdraws its claim from the Travis County courts' jurisdiction and provides this Court with exclusive, original jurisdiction. In the alternative, it asserts that this Court has jurisdiction under the statutory jurisdiction afforded by section 22.002(c) of the Government Code. We first address the argument regarding section 24 of the Act.

We held in section IIA that section 24 of the Act constitutes a specific, limited exception to the general grant of jurisdiction in the district courts of Travis County, *see* TEX. GOV'T CODE § 311.026(b) (specifying that specific statutory provisions prevail over general ones in statutory construction), and is a valid legislative conferral of jurisdiction under Article V, Section 3(a) of the Constitution. Assuming, without deciding, that Section 3(a) authorizes the Legislature to confer original jurisdiction on this Court for an as-applied challenge, section 24 of the Act only confers original jurisdiction over challenges to the constitutionality of the Act. It does not authorize this Court to exercise original jurisdiction over challenges to how the Comptroller assesses, enforces,

25

or collects the franchise tax. Thus, section 24 of the Act does not confer original jurisdiction on this Court over Allcat's as-applied challenge. *See Chenault*, 914 S.W.2d at 141.

Next, we address Allcat's argument that section 22.002(c) of the Government Code gives this Court original jurisdiction. Section 22.002(c) provides

> Only the supreme court has the authority to issue a writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any of the officers of the executive departments of the government of this state to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform.

TEX. GOV'T CODE § 22.002(c). To support its assertion Allcat cites *In re Smith*, 333 S.W.3d 582 (Tex. 2011), and *A&T Consultants, Inc. v. Sharp*, 904 S.W.2d 668 (Tex. 1995). In those cases the Court determined it had jurisdiction because controlling statutes that expressly authorized mandamus relief did not state which court had jurisdiction to issue the writ against a state executive officer. *See In re Smith*, 333 S.W.3d at 585 (citing TEX. CIV. PRAC. & REM. CODE § 103.051(e)); *A&T*, 904 S.W.2d at 672 (citing former TEX. GOV'T CODE § 552.321, *amended by* Act of May 23, 1999, 76th Leg., ch. 1319, § 27 (adding a provision specifying the court in which a suit for writ of mandamus must be filed)). In this case, however, the Tax Code expressly provides not only which courts have jurisdiction to provide relief in taxpayer challenges—the district courts of Travis County—but also addresses whether those courts are authorized to provide mandamus or other similar relief. *See* TEX. TAX CODE §§ 112.001, 112.108.[12]

---

[12] Section 112.108 provides as follows:

Except for a restraining order or injunction issued as provided by this subchapter, a court may not issue a restraining order, injunction, declaratory judgment, *writ of mandamus or prohibition*, order requiring the payment of taxes or fees into the registry or custody of the court, or other similar legal or equitable relief against the state or a state agency relating to the applicability, assessment,

26

Moreover, even if section 22.002(c) of the Government Code empowered this Court to exercise original jurisdiction over Allcat's as-applied challenge, the more detailed, specific construct of the Tax Code would apply over section 22.002(c)'s general provisions and limitations. *See* TEX. GOV'T CODE § 311.026 (providing that if statutes conflict, "the special or local provision prevails as an exception to the general provision"); *see also A&T*, 904 S.W.2d at 672 ("Any exception to [section 22.002(c) of the Government Code] would require express statutory authorization by the legislature."). And section 24 of the Act is not an exception to the Tax Code in regard to the as-applied challenge.

We hold that we do not have original jurisdiction over Allcat's as-applied challenge.

### IV. Attorney's Fees

Allcat seeks to recover attorney's fees pursuant to the DJA. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011. It argues that we should presume the Legislature intended to incorporate the DJA into section 24 of the Act because section 24 authorizes declaratory relief, thus providing jurisdiction over Allcat's claim for attorney's fees. *See id.* § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). The Comptroller points out that even if section 24 validly grants jurisdiction to this Court,

---

collection, or constitutionality of a tax or fee covered by this subchapter or the amount of the tax or fee due, provided, however, that after filing an oath of inability to pay the tax, penalties, and interest due, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts. *The court may grant such relief as may be reasonably required by the circumstances.* A grant of declaratory relief against the state or a state agency shall not entitle the winning party to recover attorney fees.

TEX. TAX CODE § 112.108 (emphasis added).

27

its language plainly authorizes only declaratory and injunctive relief—not attorney's fees. *See* Act § 24 (stating that the Court "may issue injunctive or declaratory relief in connection with the [constitutional] challenge"). We agree with the Comptroller that section 24 does not reflect legislative intent to incorporate the DJA.

When construing a statute we presume that every word in the statute was used for a purpose. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008). Just as importantly, we presume that every word excluded from the statute was excluded for a purpose. *Id.*

Assuming, without deciding, that Article V, Section 3(a) authorizes the Legislature to confer jurisdiction for us to award attorney's fees in an original proceeding such as this, section 24 of the Act does not reference the DJA. The presumption Allcat contends for is the opposite of the long-standing judicial presumption that words excluded from a statute were excluded for a purpose. We will not apply it. We conclude that we do not have jurisdiction over the claim for attorney's fees.

The Comptroller advances several reasons why Allcat should not recover attorney's fees if we have jurisdiction over the claim. Because we do not have jurisdiction over the claim, we do not address her contentions. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (noting that an appellate court's opinion is advisory if the court does not have jurisdiction over the pending matter).

## V. Response to the Dissent

The dissent says section 24 of the Act does not confer mandamus jurisdiction on the Court because it does not use the word "mandamus." The dissent reads section 24 too narrowly. The Legislature clearly intended section 24 to confer jurisdiction on this Court for all taxpayer suits

28

challenging the constitutionality of the Act. The second part of section 24 references injunctive or declaratory relief, but nowhere does the Act purport to limit the jurisdictional grant to those types of relief. Certainly the first part of section 24 does not limit the jurisdiction it attempts to confer on the Court. And although the conferral of jurisdiction in section 24 is broader than that authorized by Article V, Section 3(a), this does not mean that mandamus jurisdiction is not included within section 24's jurisdictional grant. As we noted in section IIA, when the Legislature attempts to confer jurisdiction in excess of that allowed by the Constitution, we exercise jurisdiction only to the extent allowed by the Constitution. *See Love*, 28 S.W.2d at 522. In this regard, should declaratory or injunctive relief have been appropriate in this case, we would not have looked to the jurisdiction purportedly granted in section 24 for authority. We decided in *Love* and *Lane* that such a grant would not be constitutional. Rather, we would have determined whether such relief was necessary to make our mandamus jurisdiction effective, that is, whether it was correlative to our mandamus jurisdiction. *Lane*, 249 S.W.2d at 593.

The dissent also says that Chapter 112 of the Tax Code explicitly prohibits mandamus relief in this type of suit, and the Act is not an exception to that prohibition. We disagree. While section 112.108 of the Tax Code may generally limit the granting of mandamus relief under certain circumstances, section 24 of the Act is a later-enacted, specific grant of original jurisdiction—including mandamus jurisdiction—over the type of proceeding Allcat brings: a challenge to the constitutionality of the Act. Assuming a conflict exists between section 112.108 and the Act, we agree with the dissent that when statutes are in conflict, the more specific, and later, enactment controls. *See* TEX. GOV'T CODE § 311.026. In this instance, that is the Act. *Compare*

29

Act of May 24, 1989, 71st Leg., R.S., ch. 232, § 16, 1989 Tex. Gen. Laws 232, *with* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, §§ 1–27, 2006 Tex. Gen. Laws 1.

The dissent next argues that mandamus is not appropriate here because there is no ministerial duty for the Comptroller to "independently sit in judgment of the constitutionality of every statute she is charged with enforcing." ___ S.W.3d ___ (Willett, J., dissenting). But we do not address whether she has such a duty, or whether it would have been within her discretion to refuse to enforce the Act as to Allcat's natural person partners because she believed applying it to them would violate the Bullock Amendment. The Comptroller here enforced the statute and relies on it as authority to refuse Allcat's claim for a refund. We determine only that Allcat has not shown entitlement to a refund on the basis that the Comptroller has no legal authority to retain the taxes she collected from Allcat. That is, Allcat has not shown the Act is unconstitutional.

Finally, the dissent discusses at length the question of whether the Legislature violated the separation of powers doctrine by mandating a time limit for us to decide challenges such as Allcat's. *See* TEX. CONST. art. II, § 1. The separation of powers issue is neither subtle nor unimportant. However, the issue (1) is not raised or briefed by the parties, (2) is not alleged to have any harmful effect on the outcome of the proceeding or our decision, and (3) does not affect the validity of our decision. Given the state of the record, any opinion on the issue would be advisory. *See*, *e.g.*, *Valley Baptist Med. Ctr.*, 33 S.W.3d at 822 ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions."); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (noting that the distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties, and a judgment based on the opinion

does not remedy an actual or imminent harm). Nevertheless, the dissent's extensive discussion on this issue warrants at least some response.

Article II, Section 1 of the Texas Constitution provides as follows:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. We discussed in section IIA how a statute conferring more jurisdiction on this Court than Article V, Section 3(a) authorizes is invalid to the extent it exceeds the Legislature's constitutional power to confer jurisdiction. The principle involved in that determination applies to the provisions of Article II, Section 1: the Legislature cannot validly exercise a power properly attached to the judiciary except as expressly permitted by the Constitution, or exceed the limits imposed on it by the Constitution.

However, this Court does not function in a vacuum. We recognize that our decision will have ramifications. The Legislature apparently concluded that expediting a judicial decision in matters such as this will be in the best interests of all involved. We see no valid reason that this Court cannot cooperate with priorities expressed by other branches of government so long as we fulfill our constitutional duties and neither impair our judicial prerogatives and functions, nor impair the rights of the parties. We do not see how expediting disposition of this matter violates our constitutional duties or impairs our judicial prerogatives or functions; and the parties have neither

31

alleged nor shown that they have been harmed or prevented from properly presenting their positions by the manner of the proceedings.

## VI.  Conclusion

We deny Allcat's requests for relief relating to its facial challenge because the Act does not violate Article VIII, Section 24 of the Constitution.  We dismiss the as-applied challenge and attorney's fees claim for lack of jurisdiction.

_____
Phil Johnson
Justice


**OPINION DELIVERED:**  November 28, 2011