December 8, 2014

Mr. Phil Adams
Chairman, Board of Regents
The Texas A&M University System
Post Office Box 15812
College Station, Texas 77841

Opinion No. GA-1091

Re: Authority of Texas A&M University to use available university funds for the support and maintenance of the programs of a branch campus at Galveston or at other branch campuses as may be established in the state (RQ-1204-GA)

Dear Mr. Adams:

Article VII, section 18 of the Texas Constitution provides for allocations out of the Available University Fund ("AUF") for institutions and agencies in the Texas A&M University System ("TAMU System") and the University of Texas System. TEX. CONST. art. VII, § 18. The allocation of funds from the AUF is authorized for two purposes: funding related to capital projects and funding for "support and maintenance." *Id.* § 18(a), (b), (f). Subsection 18(f) expressly requires appropriation of AUF support-and-maintenance funds to Texas A&M University ("University"). *Id.* § 18(f). As discussed below, you state that Texas A&M University at Galveston ("TAMU Galveston") has been integrated into the University as a branch campus.[1] You ask whether AUF support-and-maintenance funds provided to the University may be used for programs of a branch campus at Galveston or at any other University branch campus that may be established in the State of Texas.[2] Request Letter at 2–5. Your question primarily concerns how article VII, section 18 should be construed.

Courts construing the Texas Constitution "rely heavily on the literal text" and "interpret [its] words as they are generally understood." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 466 (Tex. 2011). We therefore examine the text of section 18 to determine the eligibility of TAMU Galveston and other TAMU System institutions for support-and-maintenance AUF

---

[1]*See* Letter from Ray Bonilla, Gen. Counsel, Tex. A&M Univ. Sys., to Honorable Greg Abbott, Tex. Att'y Gen. at 5 (June 3, 2014), http://www.texasattorneygeneral.gov/opin ("Request Letter").

[2]As you ask only about a prospective branch campus if it is established in the State of Texas, we do not consider the University's authority to use support-and-maintenance funds elsewhere.

funding. Support-and-maintenance funding is mentioned only in article VII, subsection 18(f). Subsection 18(f) allocates a portion of the annual AUF distribution to the TAMU System Board of Regents, which in turn must appropriate these funds "for the support and maintenance of The Texas A&M University System administration, *Texas A&M University*, and Prairie View A&M University." TEX. CONST. art. VII, § 18(f) (emphasis added). The reference to "Texas A&M University" without qualification suggests that the appropriation is for the University as an institution, without regard to a particular location or campus. *See Cramer v. Sheppard*, 167 S.W.2d 147, 154 (Tex. 1943) (orig. proceeding) (refusing to add a limitation or exception to a constitutional provision not warranted by the plain language).

Subsection 18(f) must be construed in the context of section 18 as a whole, however, because constitutional provisions are not construed in isolation. *See In re Nestle USA, Inc.*, 387 S.W.3d 610, 619 (Tex. 2012) (orig. proceeding). Thus, we consider whether any other reference in section 18 limits appropriations to "Texas A&M University" under subsection 18(f) to a particular location or campus. Only one reference to the University in section 18 includes a geographic qualification or limitation. *See* TEX. CONST. art. VII, § 18(h). Subsection (h) authorizes the Legislature to provide for the approval of new construction facilities at eligible institutions and agencies except "The University of Texas at Austin, Texas A&M University *in College Station*, and Prairie View A&M University." *Id.* (emphasis added). That subsection (h) refers to "Texas A&M University in College Station" while subsection 18(f) refers to "Texas A&M University" without qualification could indicate that subsection 18(f) is not intended to restrict the use of support-and-maintenance funds appropriated to the University to a particular location or campus. *Id.* § 18(f), (h).

Another provision, article VII, subsection 18(a), authorizes the Board of Regents of the TAMU System to issue bonds and notes for land acquisition and other capital projects "at or for" the TAMU System administration and "component institutions of the system." *Id.* § 18(a). The provision lists ten entities as component institutions, four of which are universities: "(1) *Texas A&M University*, including its medical college which the legislature may authorize as a separate medical institution; (2) Prairie View A&M University, including its nursing school in Houston; (3) Tarleton State University; [and] (4) *Texas A&M University at Galveston*." *Id.* (emphasis added). By listing them separately, subsection 18(a) treats the University and TAMU Galveston as distinct component institutions for capital-funding purposes. But subsection 18(a) also recognizes that component institutions may change over time and may have more than one campus. *See id.* (providing that the University includes a medical college which the Legislature may authorize and that Prairie View A&M University includes a nursing school in Houston).

The plain language of article VII, subsection 18(f) provides for the appropriation of AUF funds for the support and maintenance of the University without qualification. *Id.* § 18(f). No other provision in subsection 18 limits the use of support-and-maintenance funds to a specific location or campus. Thus, because subsection 18(f) authorizes appropriations to the University as an institution, the answer to your first question depends on whether TAMU Galveston is a part of the University.

You assert that the Legislature has gradually merged or integrated TAMU Galveston into the University and, as a result, TAMU Galveston is now a part of the University eligible to

receive AUF support-and-maintenance funding under article VII, section 18(f). Request Letter at 5, 9. Section 87.201 of the Education Code establishes TAMU Galveston as "a special purpose institution of higher education . . . under the management and control of the board of regents of The Texas A&M University System, with degrees offered under the name and authority of Texas A&M University at College Station." TEX. EDUC. CODE ANN. § 87.201(a) (West 2002). The Legislature has granted the TAMU System Board of Regents the authority "to designate Texas A&M University at Galveston as a branch of Texas A&M University," and you inform us that the Board of Regents has exercised that authority. *Id.*; Request Letter at 5.[3]

While the facts you recite support your position that TAMU Galveston is now a part of the University, we cannot definitively resolve the issue in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0648 (2008) at 7 (stating that this office cannot investigate and determine mixed questions of fact and law). Rather, that determination must be made in the first instance by the TAMU System Board of Regents when it makes support-and-maintenance appropriations to the University. *See* TEX. CONST. art. VII, § 18(f) (stating that, "in making just and equitable appropriations to Texas A&M University and Prairie View A&M University, [the Board of Regents] shall exercise its discretion with due regard to such criteria as the board may deem appropriate from year to year"). If TAMU Galveston is now a part of the University, then article VII, section 18 does not preclude the University from using AUF support-and-maintenance funds for its programs at TAMU Galveston.

Finally, you ask whether any other branch campus of the University, if established in the State of Texas, would be eligible to receive support-and-maintenance AUF funds. Request Letter at 8–9. As discussed above, the Texas Constitution does not limit AUF support-and-maintenance funding to any particular campus or location of the University. Thus, if a branch campus is established in the State of Texas *as a part of the University*, then the University may use AUF support-and-maintenance funds for the branch campus.

---

[3] While the Education Code does not define "branch campus," the Texas Higher Education Coordinating Board defines the term as "[a] major, secondary location of an institution offering multiple programs, usually with its own administrative structure and usually headed by a Dean. A branch campus must be established by the Legislature or approved by the Coordinating Board." 19 TEX. ADMIN. CODE § 5.73(2) (2014) (Tex. Higher Educ. Coordinating Bd., Definitions).

# S U M M A R Y

Article VII, subsection 18(f) of the Texas Constitution authorizes appropriation of available university funds for the support and maintenance of Texas A&M University as an institution, without regard to location or campus. Article VII, section 18 does not preclude Texas A&M University from using support-and-maintenance funds for a branch campus established in the State of Texas.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee