**Reversed and Rendered and Opinion Filed August 30, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01619-CV**

**LISLE PATTON AND BARRETT DAFFIN FRAPPIER TURNER & ENGEL, L.L.P.**
**F/K/A BARRETT BURKE WILSON CASTLE DAFFIN & FRAPPIER, L.L.P., Appellants**
**V.**
**COLLIN D. PORTERFIELD, Appellee**

**On Appeal from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-10-07440-A**

## OPINION

Before Justices Francis, Lang, and Evans
Opinion by Justice Lang

In this case, we address a question of law as to how cash proceeds from the foreclosure of a purchase money deed of trust on a homestead should be distributed by a deed of trust substitute trustee as between the senior lienholder, a junior, home equity lienholder, and the homeowner. In so doing, we consider the constitutional and common law arguments raised by appellee Collin D. Porterfield in the trial court regarding his claim the substitute trustee under the purchase money deed of trust should have paid some of the cash proceeds from the foreclosure to Porterfield and not to the home equity lienholder.

Appellants Lisle Patton and his law firm, Barrett Daffin Frappier Turner & Engel, L.L.P., f/k/a Barrett Burke Wilson Castle Daffin & Frappier, L.L.P., appeal the trial court's judgment against them and in favor of Collin D. Porterfield, a licensed attorney representing himself,

wherein the trial court sustained Porterfield's claims in a judgment that states, in part, "[a]fter considering the [Agreed] Statement of Facts, the arguments of counsel, and the law, the [trial court] has determined that [Patton and Barrett Daffin] breached their contractual obligation to [Porterfield] to pay him the excess foreclosure proceeds." This case was tried before the trial court on agreed facts.

On appeal, in one issue, Patton and Barrett Daffin argue the trial court erred when it applied the law to the agreed facts for two reasons:

> (1) article XVI, section 50(a)(6) of the Texas Constitution does not prevent the trustee from satisfying the junior, "Home Equity Note" from the excess proceeds generated by the foreclosure of the senior, purchase money "Deed of Trust"; and

> (2) when Patton and Barrett Daffin paid the proceeds of the sale in excess of the senior debt to America's Servicing, the servicer of the junior "Home Equity Security Instrument," they were in full compliance with the terms of the purchase money "Deed of Trust" that required distribution of "any excess [proceeds] to the person or persons legally entitled to it."

Also, in his brief, Porterfield moved to dismiss this appeal for lack of jurisdiction.

We conclude this Court has jurisdiction over this appeal and deny Porterfield's motion to dismiss. We further conclude the trial court erred when it applied the law to the agreed facts. We reverse the trial court's judgment and render a take-nothing judgment on Porterfield's claim against Patton and Barrett Daffin.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 2003, Porterfield acquired title to real property located at 3336 Hanover Street, University Park, Texas. He claimed the real property as his homestead. On the same day, Porterfield executed an "Adjustable Rate Note" and a purchase money "Deed of Trust," granting a first lien security interest in the real property to GreenPoint Mortgage Funding, Inc., and securing a promissory note in the original principal amount of $648,150. The purchase money

"Deed of Trust" was recorded in the real property records of Dallas County, Texas. Cenlar Federal Savings Bank became the servicer of the purchase money "Deed of Trust."[1]

On August 10, 2005, Porterfield executed a "Home Equity Note" in the original principal amount of $261,655. On the same day, Porterfield executed a "Home Equity Security Instrument," which granted a second lien security interest in the real property to Centex Home Equity Company, L.L.C. This "Home Equity Security Instrument" was recorded in the real property records of Dallas County, Texas. America's Servicing was the servicer for the "Home Equity Security Instrument." It is uncontested that both the purchase money "Deed of Trust" and "Home Equity Security Instrument" encumbered the real property and the "Home Equity Security Instrument" was junior to the purchase money "Deed of Trust."

The record reflects that as of February 4, 2008, the payoff amount for the purchase money debt secured by the "Deed of Trust" was $733,558.23. Further, as of January 24, 2008, the payoff amount for the debt secured by the "Home Equity Security Instrument" was $293,424.27.

Patton was employed by Barrett Daffin and acted as substitute trustee pursuant to the purchase money "Deed of Trust." On February 5, 2008, Patton conducted a foreclosure sale and sold the property for $1,102,000. Neither the amount secured by the purchase money "Deed of Trust," nor the amount secured by the "Home Equity Security Instrument" were satisfied prior to this foreclosure sale. The terms of the purchase money "Deed of Trust" directed Patton to apply the proceeds of the sale as follows: "(a) to all expenses of the sale, including, but not limited to, reasonable [t]rustee's and attorneys' fees; (b) to all sums secured by this first security instrument; and (c) any excess to the person or persons legally entitled to it." Barrett Daffin assisted Patton

---

[1] Section 51.0001(3) of the Texas Property Code defines a "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument. A mortgagee may be the mortgage servicer." TEX. PROP. CODE ANN. § 51.0001(3) (West Supp. 2012).

in the distribution of the proceeds and mailed Cenlar, the servicer for the purchase money "Deed of Trust" debt, a check in the amount of $733,558.23 and sent America's Servicing, the servicer for the "Home Equity Security Instrument," a check in the amount of $293.424.27. Patton waived his trustee's fee. After paying the foreclosure fees and attorneys' fees, Barrett Daffin "transmitted" to Porterfield $70,375.33, which was the remainder of the foreclosure sale proceeds.

Porterfield sued Patton and Barrett Daffin, seeking an accounting and alleging claims of conspiracy to commit conversion, conspiracy to breach duty of trust, conspiracy to commit fraud, negligence, and breach of contract. Porterfield claimed that Patton and Barrett Daffin wrongfully withheld and failed to pay him all of the foreclosure sale proceeds in excess of that paid to satisfy the debt secured by the purchase money "Deed of Trust." He sought actual, consequential, and exemplary damages. Patton and Barrett Daffin answered, generally denying the allegations, specially denying that Porterfield was entitled to the excess proceeds before payment was made to America's Servicing, the servicer for the debt secured by the "Home Equity Security Instrument," and asserting various affirmative defenses.

The parties filed a joint motion for judgment on an agreed statement of facts. The trial court granted the motion and signed a written order that "certified and approved" the agreed statement of facts. That order stated that the trial court's judgment "[would] be based on the [agreed] facts." Further, in a Rule 11 Agreement filed with the trial court, the parties agreed the only issue before the trial court was whether Patton and Barrett Daffin "breached their contractual duty to [Porterfield] by distributing funds to the [servicer for the debt secured by the "Home Equity Security Instrument," America's Servicing]." They also agreed that, in the event the trial court rendered a judgment against Patton and Barrett Daffin, they would be jointly and severally liable for any damages awarded to Porterfield. Then, Porterfield filed his second

amended petition, which omitted all of his causes of action, except for breach of contract.[2] Finally, both parties filed separate motions for judgment.

In Porterfield's motion for judgment, he recited the language in the purchase money "Deed of Trust" (a document that is part of the Agreed Statement of Facts) that stated the trustee was to pay the excess proceeds "to persons entitled to it." Porterfield contended that America's Servicing, the servicer for the debt secured by the "Home Equity Security Instrument," was not a person entitled to the excess proceeds for two reasons. First, Porterfield asserted that, as a matter of law, because of the Texas Constitution provision as to home equity loans, the common law as to non-home-equity loans does not apply, and the Texas Constitution as to a home equity loan requires a lender to obtain a court order before it may foreclose its lien and America's Servicing did not obtain such an order. Second, he claimed that, as a matter of contract, the "Home Equity Security Instrument" granted Centex, the lender, a lien against the homestead property only and not against excess cash proceeds remaining after foreclosure of the senior, purchase money "Deed of Trust." Porterfield did not argue the foreclosure of the purchase money "Deed of Trust" was improper or that Patton and Barrett Daffin improperly applied the common law governing the distribution of excess proceeds, except as to the home equity lien. The trial court concluded in its judgment that Patton and Barrett Daffin "breached their contractual obligation to [Porterfield]" and ordered that Porterfield recover $293,424.27 in damages, which was equal to the amount paid to America's Servicing, the servicer of the debt secured by he "Home Equity Security Instrument."

---

[2] Porterfield's claim is articulated in several different ways. In his second amended petition filed with the trial court, Porterfield alleged that Patton and Barrett Daffin "owed Porterfield the duty to strictly comply" with the provisions of the purchase money "Deed of Trust," requiring that "any excess [proceeds from a foreclosure sale will be paid] to the person or persons legally entitled to it." In the agreed statement of facts, the parties agreed Porterfield's claim was as follows: "[Porterfield] sued [Patton and Barrett Daffin] alleging that the payment to [America's Servicing, the servicer of the "Home Equity Security Instrument,"] was wrongful and that the money paid to [America's Servicing] should have been paid to [Porterfield]." Finally, the rule 11 agreement filed by the parties provided as described above.

## II.  JURISDICTION

Porterfield contends this Court does not have jurisdiction over this appeal.  He claims that, regardless of the merits of Patton and Barrett Daffin's issue on appeal, America's Servicing did not obtain the required court order permitting it, as the servicer of the debt secured by the "Home Equity Security Instrument," to receive excess proceeds from the foreclosure, and as a result, this Court lacks subject matter jurisdiction to consider the issue.  *See* TEX. CONST. art. XVI, § 50(a)(6)(D).  Porterfield does not cite any authority in support of his jurisdictional challenge.[3]  Further, Porterfield does not claim the judgment is interlocutory or that the amount in controversy is less than $250.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.012.  Further, Porterfield does not contend the trial court rendered a judgment that did not address all of the issues before it.  Generally, Texas appellate courts have jurisdiction over final judgments, and such interlocutory orders as the legislature deems appealable by statute.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.012 (West Supp. 2012); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001).  The record on appeal shows that the trial court signed a final judgment that appears to address the sole issue agreed by the parties to be submitted and the notice of appeal was timely filed.  Accordingly, we conclude that this Court has jurisdiction over this appeal.

## III.  PAYMENT OF JUNIOR HOME EQUITY LIEN FROM EXCESS PROCEEDS

In their sole issue on appeal, Patton and Barrett Daffin argue the trial court erred when it applied the law to the agreed facts.  Porterfield contends that the trial court did not err as a matter of both: (1) constitutional law; and (2) contract law.

Most of the arguments made by Patton and Barrett Daffin are directed at propositions asserted by Porterfield in the trial court.  They assert those propositions are not well-founded and the trial court's judgment, whether based one or all of those propositions, was in error.  We

---

[3]  Later, in this opinion, we address a similar argument by Porterfield that he asserts on the merits.  We determine that argument is without merit.

address each of the propositions that could support the judgment to determine if any are sound under the law.

### A. Standard of Review

Texas Rule of Civil Procedure 263 states the following:

> Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause.

TEX. R. CIV. P. 263. A case tried on agreed facts is considered to have "the nature of a special verdict" and is a request by the litigants for judgment in accordance with the applicable law. *Hutcherson v. Sovereign Camp. W.O.W.*, 112 Tex. 551, 251 S.W. 491 (1923); *Unauthorized Practice of Law Comm. v. Jansen*, 816 S.W.2d 813, 814 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Brophy v. Brophy*, 599 S.W.2d 345, 347 (Tex. Civ. App.—Texarkana 1980, no writ). The agreed facts are binding on the parties, the trial court, and the appellate court. *Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 811 (Tex. App.—Dallas 2007, pet. denied). Therefore, the question on appeal is limited to the correctness of the trial court's application of the law to the agreed facts. *Jansen*, 816 S.W.2d at 814–15.

An appellate court reviews de novo the issue of whether the trial court properly applied the law to the agreed facts, but it does not review the legal or factual sufficiency of the evidence. *See Panther*, 234 S.W.3d at 811. In an appeal of an "agreed" case, there are no presumed findings in favor of the judgment and the pleadings are immaterial. *Panther*, 234 S.W.3d at 811; *Alma Group, L.L.C. v. Palmer*, 143 S.W.3d 840, 844 (Tex. App.—Corpus Christi 2004, pet. denied). An appellate court conclusively presumes that the parties have brought before the court all facts necessary for the presentation and adjudication of the case. *Cummins & Walker Oil Co. v. Smith*, 814 S.W.2d 884, 886 (Tex. App.—San Antonio 1991, no writ).

### B. Home Equity Loans Under the Texas Constitution

As part of their sole issue, Patton and Barrett Daffin argue that article XVI, section 50(a)(6) of the Texas Constitution relating to home equity loans does not prevent the substitute trustee from satisfying the junior, "Home Equity Note" from the excess proceeds generated by the foreclosure of the senior, purchase money "Deed of Trust." Porterfield responds that article XVI, section 50(a)(6) of the Texas Constitution, which permits home equity loans, precludes the application of the long-standing common law relating to lien priority and the distribution of excess proceeds. Accordingly, we need not address the foreclosure laws governing lien priority and the distribution of excess proceeds. *See, e.g., AMC Mortg. Servs., Inc. v. Watts*, 260 S.W.3d 582, 585 (Tex. App.—Dallas 2008, no pet.) (well-established rule that following valid foreclosure of senior lien, junior liens, if not satisfied from proceeds, are extinguished).

### 1. Constitutional Interpretation

When interpreting the Texas Constitution, courts "rely heavily on its literal text and must give effect to its plain language." *Stringer v. Cendent Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000). Courts ascertain and give effect to the plain intent and language of the framers of a constitutional amendment and the people who adopted it. *In re Allcat Claims Svc., L.P.*, 356 S.W.3d 455, 466 (Tex. 2011) (orig. proceeding). Courts presume the language of the Texas Constitution was carefully selected, interpret words as they are generally understood, and rely heavily on the literal text. *In re Allcat Claims*, 356 S.W.3d at 466.

### 2. Applicable Law

The Texas Constitution specifically protects homesteads from forced sale except to satisfy liens securing purchase money, tax, or home improvement debts. *See* TEX. CONST. art. XVI, § 50; *Stringer*, 23 S.W.3d at 354. In 1997, the Texas Constitution was amended to allow home equity loans. *Stringer*, 23 S.W.3d at 354. The purpose of the amendment was "to expand

the types of liens for loans that a lender, with the homeowner's consent, could place against the

homestead." *Stringer*, 23 S.W.3d at 354. Article XVI, section 50(a)(6), [4] of the Texas

---

[4] Article XVI, section 50(a)(6), of the Texas Constitution states:

(6) an extension of credit that:

(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse;

(B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made;

(C) is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud;

(D) is secured by a lien that may be foreclosed upon only by a court order;

(E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit;

(F) is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time unless the open-end account is a home equity line of credit;

(G) is payable in advance without penalty or other charge;

(H) is not secured by any additional real or personal property other than the homestead;

(I) is not secured by homestead property that on the date of closing is designated for agricultural use as provided by statutes governing property tax, unless such homestead property is used primarily for the production of milk;

(J) may not be accelerated because of a decrease in the market value of the homestead or because of the owner's default under other indebtedness not secured by a prior valid encumbrance against the homestead;

(K) is the only debt secured by the homestead at the time the extension of credit is made unless the other debt was made for a purpose described by Subsections (a)(1)-(a)(5) or Subsection (a)(8) of this section;

(L) is scheduled to be repaid:

(i) in substantially equal successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment; or

(ii) if the extension of credit is a home equity line of credit, in periodic payments described under Subsection (t)(8) of this section;

(M) is closed not before:

(i) the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section;

(ii) one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing. If a bona fide emergency or another good cause exists and the lender obtains the written consent of the owner, the lender may provide the documentation to the owner or the lender may modify previously provided documentation on the date of closing; and

(iii) the first anniversary of the closing date of any other extension of credit described by Subsection (a)(6) of this section secured by the same homestead property, except a refinance described by Paragraph (Q)(x)(f) of this subdivision, unless the owner on oath requests an earlier closing due to a state of emergency that:

(a) has been declared by the president of the United States or the governor as provided by law; and

(b) applies to the area where the homestead is located;

(N) is closed only at the office of the lender, an attorney at law, or a title company;

(O) permits a lender to contract for and receive any fixed or variable rate of interest authorized under statute;

(P) is made by one of the following that has not been found by a federal regulatory agency to have engaged in the practice of refusing to make loans because the applicants for the loans reside or the property proposed to secure the loans is located in a certain area:

(i) a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States;

(ii) a federally chartered lending instrumentality or a person approved as a mortgagee by the United States government to make federally insured loans;

(iii) a person licensed to make regulated loans, as provided by statute of this state;

(iv) a person who sold the homestead property to the current owner and who provided all or part of the financing for the purchase;

(v) a person who is related to the homestead property owner within the second degree of affinity or consanguinity; or

(vi) a person regulated by this state as a mortgage broker; and

(Q) is made on the condition that:

(i) the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender;

(ii) the owner of the homestead not assign wages as security for the extension of credit;

(iii) the owner of the homestead not sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in;

(iv) the owner of the homestead not sign a confession of judgment or power of attorney to the lender or to a third person to confess judgment or to appear for the owner in a judicial proceeding;

(v) at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit;

(vi) the security instruments securing the extension of credit contain a disclosure that the extension of credit is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution;

(vii) within a reasonable time after termination and full payment of the extension of credit, the lender cancel and return the promissory note to the owner of the homestead and give the owner, in recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit;

(viii) the owner of the homestead and any spouse of the owner may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge;

(ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made;

(x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the

Constitution "establishes the terms and conditions a home-equity lender must satisfy to make a valid loan." TEX. CONST. art. XVI, § 50(a)(6); *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 862 (Tex. App.—Dallas 2003, pet. denied). Further, a home equity loan "is secured by a lien that may be foreclosed upon only by a court order." TEX. CONST. art. XVI, § 50(a)(6)(D); *see also* TEX. R. CIV. P. 735–36.

A home equity loan "is without recourse for personal liability against each owner and the spouse of each owner." TEX. CONST. art. XVI, § 50(a)(6)(C); *see also* 7 TEX. ADMIN. CODE § 153.4. Generally, a nonrecourse note has the effect of making the note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note. *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

---

lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:

(a) paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision;

(b) sending the owner a written acknowledgement that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Paragraph (B) of this subdivision, if applicable, or is not secured by property described under Paragraph (H) or (I) of this subdivision, if applicable;

(c) sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section;

(d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;

(e) sending the owner a written acknowledgement, if the failure to comply is prohibited by Paragraph (K) of this subdivision, that the accrual of interest and all of the owner's obligations under the extension of credit are abated while any prior lien prohibited under Paragraph (K) remains secured by the homestead; or

(f) if the failure to comply cannot be cured under Subparagraphs (x)(a) -(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section; and

(xi) the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents.

"[U]nder a nonrecourse note, the maker does not personally guarantee repayment of the note and will, thus, have no personal liability." *Fein*, 68 S.W.3d at 266. If a maker of a nonrecourse note elects not to repay the note, he is not exposed to personal liability, but, instead, takes the risk that the collateral securing the note will be lost if the holder of the note decides to enforce its security interest in the collateral. *Fein*, 68 S.W.3d at 266.

Article XVI, section 50(a)(6)(H), of the Texas Constitution states that a home equity loan may not be "secured by any additional real or personal property other than the homestead." TEX. CONST. art. XVI, § 50(a)(6)(H); *see also* 7 TEX. ADMIN. CODE § 153.8 (interpreting section 50(a)(6)(H)).[5] A home equity loan secured by insurance proceeds related to the homestead or condemnation proceeds is not considered to be secured by additional real or personal property. 7 TEX. ADMIN. CODE § 153.8(1)(C)–(D). However, if under Texas law the property ceases to be the homestead of the owner, then the lender for purposes of section 50(a)(6)(K), may treat what was previously "a home equity mortgage" as "a non-homestead mortgage." 7 TEX. ADMIN. CODE § 153.10(2).

### 3. Application of the Law to the Facts

First, we address Patton and Barrett Daffin's challenge to Porterfield's assertion in the trial court that the common law does not apply to article XVI, section 50(a)(6), of the Texas Constitution. Patton and Barrett Daffin argue there is nothing in the plain language of or history surrounding article XVI, section 50(a)(6), of the Texas Constitution that suggests the Texas legislature intended to "forfeit" common law rights relating to the distribution of excess proceeds from a foreclosure sale. Porterfield claims that the common law does not apply to article XVI, section 50(a)(6), because there is no case law addressing a situation where a senior, purchase

---

[5] The finance commission may, on request of an interested person or on its own motion, issue interpretations of sections 50(a)(5)–(7), (e)–(p), (t), and (u) article XVI of the Texas Constitution. An interpretation under this section is applicable to all lenders authorized to make extensions of credit under section 50(a)(6), except lender regulated by the Credit Union Commission. TEX. FIN. CODE ANN. § 11.308 (West 2013).

money deed of trust is foreclosed and the junior lien is a home equity security instrument. However, Porterfield does not direct us to any specific language in article XVI, section 50(a)(6), that he contends demonstrates that the common law governing foreclosure sales does not apply. We disagree with Porterfield's contentions.

We interpret and give effect to the text and the plain language of article XVI, section 50(a)(6). *See In re Allcat Claims*, 356 S.W.3d at 466; *Stringer*, 23 S.W.3d at 355. Also, we presume the language of that amendment to the Texas Constitution, which permits home equity loans, was carefully selected and interpret the words as they are generally understood, relying heavily on the text. *See In re Allcat Claims*, 356 S.W.3d at 466. Article XVI, section 50(a)(6), contains no express language or language that could impliedly abrogate or displace the common law governing foreclosure sales and the use of real estate subject to liens to satisfy secured obligations. TEX. CONST. art. XVI, § 50(a)(6); *see also LaSalle Bank N.A. v. White*, 246 S.W.3d 616, 619 (Tex. 2007) (per curiam) (section 50(e) of Texas Constitution contains no language indicating intended displacement of common law remedy of equitable subrogation and supreme court declined to engraft such prohibition onto constitutional language). Accordingly, we conclude the common law governing foreclosure sales and the use of real estate subject to liens to satisfy secured obligations applies to article XVI, section 50(a)(6), of the Texas Constitution.

Second, we address Porterfield's contention, challenged by Patton and Barrett Daffin, that America's Servicing, the servicer of the "Home Equity Security Instrument" securing the "Home Equity Note," was not entitled to excess proceeds from the foreclosure because it took no steps to foreclose. Porterfield asserts that, in order for a home equity lienholder to receive excess proceeds from the foreclosure of a senior, purchase money deed of trust, home equity lienholders must obtain a court order pursuant to article XVI, section 50(a)(6)(D), of the Texas Constitution and Texas Rules of Civil Procedure 735 and 736 "allowing collection," "allowing payment," and

"allowing it to collect." *See* TEX. CONST. art. XVI, § 50(a)(6)(D); TEX. R. CIV. P. 735–36. He claims that article XVI, section 50(a)(6)(D), and, in particular, Texas Rules of Civil Procedure 735.1–736.12 add requirements that expressly preclude the application of the common law relating to lien priority and the distribution of excess proceeds. Also, he asserts that to permit the junior, home equity lienholder to receive excess proceeds without first obtaining a court order would render section 50(a)(6)(D) meaningless. Patton and Barrett Daffin argue that article XVI, section 50(a)(6)(D), and rules 735 and 736 apply only to the actual foreclosure of the "Home Equity Security Instrument." They submit that did not occur, so no court order is required. Once again, we cannot agree with Porterfield's position.

Article XVI, section 50(a)(6)(D) requires that "a home equity note must be secured by a lien that may be foreclosed upon only by court order." TEX. CONST. art. XVI, § 50(a)(6)(D); *see also* TEX. R. CIV. P. 735.1–36.12. Texas Rule of Civil Procedure 735.1 states that "[r]ule 736 provides the procedure for obtaining a court order, when required, to allow foreclosure of a lien containing the power of sale in the security instrument, . . . or declaration creating the lien, including a lien securing . . . a home equity loan . . . under article XVI, section 50(a)(6) . . . of the Texas Constitution." TEX. R. CIV. P. 735.1(a). Similarly, Texas Rule of Civil Procedure 735.2 states that "[t]he only issue to be determined in a [r]ule 736 proceeding is whether a party may obtain an order under [r]ule 736 to proceed with foreclosure under applicable law and the terms of the loan agreement, contract, or lien sought to be foreclosed." TEX. R. CIV. P. 735.2. In addition, Texas Rule of Civil Procedure 736.1 specifies what must be included in an application for an expedited order allowing the foreclosure of a lien listed in rule 735. TEX. R. CIV. P. 736.1. Further, Texas Rule of Civil Procedure 736.9 states that "[a]fter an order is obtained, a person may proceed with the foreclosure process under applicable law and the terms of the lien sought to be foreclosed." TEX. R. CIV. P. 736.9. Finally, chapter 51 of the Texas Property Code sets

forth a variety of requirements for foreclosure of liens and foreclosure sales involving real property. TEX. PROP. CODE ANN. § 51.001–.015 (West 2007 & Supp. 2012). In particular, section 51.002 establishes the procedures for conducting a foreclosure sale. TEX. PROP. CODE ANN. § 51.002.

Article XVI, section 50(a)(6) provides for the creation and foreclosure of a lien securing a home equity loan. The rules are applicable only to a party proceeding to foreclose a lien created pursuant to section 50(a)(6). Porterfield's interpretation that an order of foreclosure is required under rules 735 and 736 "allowing collection," "allowing payment," or "allowing it to collect," is untenable. When one files an application pursuant to rules 735 and 736, as expressly stated in the rules, one seeks a court order "to allow foreclosure of a lien containing a power of sale" for several types of liens, including one securing a home equity loan. TEX. R. CIV. P. 735.1. The rules do not require an order for "collection," or "payment." We will not interpret article XVI, section 50(a)(6)(D) or rules 735 and 736 beyond the plain meaning of their language. Accordingly, we conclude that America's Servicing, the servicer for the junior, "Home Equity Security Instrument," was not required to obtain a court order pursuant section 50(a)(6)(D) or the rules in order to receive excess proceeds from the foreclosure of the senior, purchase money "Deed of Trust."

Third, we address the issue raised by Patton and Barrett Daffin as to Porterfield's contention that the nonrecourse language in article XVI, section 50(a)(6)(C), prohibits the proceeds of the foreclosure sale from being applied to satisfy a home equity security instrument. Porterfield maintains that the excess cash proceeds are non-homestead personal property that cannot be used to satisfy the "Home Equity Note." In effect, he claims that article XVI, section 50(a)(6)(C), expressly precludes application of the common law relating to lien priority and the distribution of excess proceeds. Patton and Barrett Daffin argue there is nothing in the text of the

Texas Constitution that suggests the nonrecourse nature of the "Home Equity Security Instrument" prohibited Patton, the substitute trustee, from distributing the excess cash proceeds as he did. Again, we disagree with Porterfield.

A home equity loan "is without recourse for personal liability against each owner and the spouse of each owner." TEX. CONST. art. XVI, § 50(a)(6)(C). Nothing in the language of section 50(a)(6)(D) suggests it prohibits the excess proceeds from the foreclosure of the senior, purchase money "Deed of Trust" from being distributed to satisfy the junior, "Home Equity Note." As previously noted, a nonrecourse note is one where the maker of the note has no personal liability. *See Fein*, 68 S.W.3d at 266. In such cases, when the lender is not timely paid, it has recourse only to the proceeds from the sale of the collateral. *See Fein*, 68 S.W.3d at 266. Porterfield has not demonstrated any basis for concluding the meaning of "nonrecourse" as related to a home equity loan is different from the meaning of "nonrecourse" as to other loans. It follows the nonrecourse nature of the "Home Equity Note" has the effect of making it payable out of the collateral, i.e., the homestead. *See Fein*, 68 S.W.3d at 266. Accordingly, we conclude that the nonrecourse language in article XVI, section 50(a)(6)(C), did not prohibit the proceeds of the foreclosure sale from being distributed to the servicer of the "Home Equity Security Instrument."

Fourth, we address a contention raised by Porterfield that is a corollary to the previous one, whether the payment of the "Home Equity Note" from excess proceeds violates the requirement of article XVI, section 50(a)(6)(H), that the home equity lien be secured by only the homestead. Porterfield claims that article XVI, section 50(a)(6)(H), of the Texas Constitution restricts the "Home Equity Security Instrument" to the homestead and foreclosure sale excess cash proceeds are not the "homestead." Patton and Barret Daffin argue that "the excess proceeds stand in the place of the foreclosed [homestead]." They claim the junior, "Home Equity Security Instrument" that previously attached to the homestead attached to the excess proceeds because

those excess proceeds were generated from the foreclosure sale of the homestead. Again, in effect, Porterfield claims that article XVI, section 50(a)(6)(H), expressly precludes the common law relating to lien priority and the distribution of excess proceeds. We disagree with Porterfield.

Article XVI, section 50(a)(6)(H) of the Texas Constitution states that a home equity loan may not be "secured by any additional real or personal property other than the homestead." TEX. CONST. art. XVI, § 50(a)(6)(H); *see also* 7 TEX. ADMIN. CODE § 153.8. It is a basic, general principle of Texas law that proceeds of the sale or disposition of the exempt property are a substitute for that exempt property. This applies to exempt personalty and homesteads. *See Matter of Swift*, 129 F.3d 792, 801 (5th Cir. 1997) (applying Texas law and citing *Sorenson v. City Nat'l Bank*, 121 Tex. 478, 49 S.W.2d 718, 721 (Tex. Comm. App. Sec. A 1932)(exemption for household furniture included proceeds from insurance settlement after furniture destroyed), *Willis v. Schoelman*, 206 S.W.2d 283 (Tex. Ct. App. 1947)(exemption for one carriage included proceeds paid on insurance policy after automobile damaged), TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(f) (West 2008)(court may not enter or enforce order under this section that requires turnover of proceeds of property exempt under any statute)); *New Orleans Ins. Ass'n v. Jameson*, 6 Tex. Civ. App. 282, 25 S.W. 307 (1894, no writ)(proceeds from insurance policy on permanent fixtures in building on homestead of insured are proceeds of homestead). Also, before the adoption of article XVI, section 50(a)(6), it was settled that the proceeds of the sale of a homestead were exempt from the payment of debts other than for debts for the purchase money of the homestead and taxes. *Alvord Nat'l Bank v. Ferguson*, 59 Tex. Civ. App. 113, 126 S.W. 622 (1910, writ ref'd). Article XVI, section 50(a)(6) amended the Texas Constitution to permit a home equity loan to be secured by the homestead. Further, the finance commission has interpreted the homestead for purposes of section 50(a)(6)(H), to include insurance proceeds

related to the homestead and condemnation proceeds.  *See* 7 TEX. ADMIN. CODE § 153.8(1)(C)–(D).  It follows that just as the cash proceeds of exempt property, including a homestead, retain an exempt character under certain circumstances, the cash proceeds from the sale of a homestead retain the character of a homestead for purposes of satisfying a home equity lien.  Accordingly, we conclude that the payment of the "Home Equity Note" from the excess proceeds  of the foreclosure of the senior, purchase money "Deed of Trust" does not violate article XVI, section 50(a)(6)(H), which requires that the home equity lien be secured by only the homestead.

### C.  Contract Does Not Prohibit Payment of Excess Proceeds to Junior Lienholder

Finally, Porterfield contends another meritorious argument supporting the trial court's judgment is that the "Home Equity Security Instrument" granted Centex, the lender, a lien against the homestead property only and not against excess cash proceeds.  Porterfield argues the trial court's judgment should be affirmed on this basis because Patton and Barrett Daffin did not raise an issue to this effect on appeal and have waived any argument to this effect.  However, this argument is the same one Porterfield makes contending a home equity loan may not be "secured by any additional real or personal property other than the homestead."  TEX. CONST. art. XVI, § 50(a)(6)(H); *see also* 7 TEX. ADMIN. CODE § 153.8.  Further, Patton and Barrett Daffin did argue they did not "breach" any obligation to Porterfield and were in full compliance with the purchase money "Deed of Trust."  The only alleged breach of contract was the payment of proceeds to the mortgage servicer for the junior lienholder.  We construe their argument to be that the purchase money "Deed of Trust" authorized the distribution of the excess proceeds generated from the homestead's foreclosure sale to satisfy the junior, "Home Equity Note."   Based on our conclusion that that the payment of the "Home Equity Note" from excess proceeds does not violate article XVI, section 50(a)(6)(H), which requires that the home equity lien be secured by only the homestead, we need not address this particular contention of Porterfield.  *Starcrest Trust*

*v. Berry*, 926 S.W.3d 343, 352 (Tex. App.—Austin 1996, no pet.) (issues of contract interpretation determinable as a matter of law).

## IV.  CONCLUSION

We conclude this Court has jurisdiction over this appeal.  Further, we conclude the trial court erred when it applied the law to the agreed facts.

The trial court's judgment is reversed and a take-nothing judgment is rendered on Porterfield's claim against Patton and Barrett Daffin.

DOUGLAS S. LANG
JUSTICE

111619F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LISLE PATTON AND BARRETT DAFFIN
FRAPPIER TURNER & ENGEL, L.L.P.,
F/K/A BARRETT BURKE WILSON
CASTLE DAFFIN & FRAPPIER, L.L.P.,
Appellants

On Appeal from the County Court at Law
No. 1, Dallas County, Texas
Trial Court Cause No. CC-10-07440-A.
Opinion delivered by Justice Lang.  Justices
Francis and Evans participating.

No. 05-11-01619-CV       V.

COLLIN D. PORTERFIELD, Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

Appellee COLLIN D. PORTERFIELD take nothing on his claim against appellants LISLE PATTON AND BARRETT DAFFIN FRAPPIER TURNER & ENGLE, L.L.P., F/K/A BARRETT BURKE WILSON CASTLE DAFFIN & FRAPPIER, L.L.P.

It is **ORDERED** that appellants LISLE PATTON & BARRETT DAFFIN FRAPPIER TURNER & ENGEL, L.L.P., F/K/A BARRETT BURKE WILSON CASTLE DAFFIN & FRAPPIER, L.L.P., recover their costs of this appeal from appellee COLLIN D. PORTERFIELD.

Judgment entered this 30th day of August, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE