**AFFIRM; and Opinion Filed August 8, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00648-CV

**KELLY POPE WORLEY AND KEVIN POPE, Appellants**
**V.**
**CHRYSANTHI AVINGER, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-00155-2015**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

This is an equitable subrogation case involving a home equity loan lien in which property owned by a deceased husband and wife was sold at a subordinate lienholder's foreclosure sale for far in excess of the junior creditor's debt amount. The excess proceeds were deposited in the court's registry. An investor later bought out the senior home equity loan position and claimed entitlement to those excess prior sale proceeds.

The main question is who gets the excess sales proceeds: (i) the investor asserting equitable subrogation rights to stand in the home equity loan lender's shoes or (ii) the prior homeowners' heirs claiming through their parents who were the home equity loan borrowers. The trial court rendered summary judgment for the investor, which we affirm primarily because the excess proceeds represented equity in the home and were thus subject to the home equity lien's reach.

More specifically, Chrysanthi Avinger, bought the home at a home owners' association foreclosure sale by paying substantially more than the owners' debt to the association. Avinger then paid a bank's superior home equity loan lien on the property and claimed the excess sale proceeds in the court's registry. Kelly Pope Worley and Kevin Pope (the Pope Children), purported heirs of the deceased couple, also claimed entitlement to those funds. The trial court granted summary judgment awarding Avinger the registry funds.

In four issues with multiple subparts, the Pope Children challenge the summary judgment arguing that: (i) Avinger's interest is in the real property and the registry funds are personality to which she is not entitled; (ii) the funds are the Pope Children's exclusive personal property because they are the Popes' heirs, Avinger has no standing to claim the excess proceeds, and even if she did, her claim is time-barred; (iii) the bank's foreclosure suit had nothing to do with Avinger's and the Pope Children's property rights in the registry funds; and (iv) awarding Avinger the registry funds provides her with "an unjust and impermissible windfall." The Pope Children's fifth issue argues that fatally defective substituted service on the deceased couple in the underlying suit renders that judgment (and hence this judgment) void.

As discussed below, we conclude that Avinger established as a matter of law that she is entitled to the registry funds. We further conclude that the Pope Children did not meet their burden to show that the judgment is void because of defective service. We thus affirm the trial court's judgment.

## I. BACKGROUND

Allen and Coeriene Pope were husband and wife. In 2002, the Popes purchased property in Eldorado Heights in McKinney (the Property).

In 2005, the Popes secured a $132,000 home equity loan from First Franklin (the Bank). The loan was secured by a lien on the Property.

Coeriene died on June 7, 2009, and Allen died roughly three years later. Neither estate was administered.

In January 2015, the Eldorado Heights Homeowners' Association sued the Popes to recover unpaid assessments due regarding the Property. When personal service on the Popes was (not surprisingly) unsuccessful, the Homeowners' Association's counsel moved for substituted service, and the court authorized such service. After substituted service, the Popes still did not answer so the court entered a default judgment against them for $4,949.32 in delinquent assessments, $4,000 in attorneys' fees and interest on the judgment.

The Property subsequently sold at a Constable's sale on May 15, 2015. Avinger purchased the Property for $75,000, and the Property was conveyed to her by Constable's Deed. And $61,232.32 in excess sale proceeds (the difference between the amount due to the Homeowners' Association and the purchase price) was deposited into the court's registry.

At the time of the Constable's sale, however, the Popes' home equity loan had an outstanding balance. The Bank filed a Rule 737 application seeking judicial foreclosure of the loan (the Bank Suit). *See* TEX. R. CIV. P. 737.

The Bank Suit, filed and maintained under a separate cause number, named the Popes' unknown heirs as defendants, and they were served by publication. Although the Popes' heirs did not appear in the Bank Suit, an ad litem was appointed to represent their interests. Avinger and the Homeowners' Association were also named defendants and were served and appeared.

The Bank Suit final judgment orders that:

- The Bank's lien is superior to the Homeowners' Association's lien;

- The Bank's lien is unaffected by the foreclosure of the Homeowners' Associations' subordinate lien;

- The Popes' heirs were immediately vested with the Popes' interest in the Property when Mr. Pope died;

–3–

- The "statutory probate lien" in favor of the Bank would be enforced by a non-judicial foreclosure sale; and

- "One of the effects of the non-judicial foreclosure shall be that [the heirs] are divested and the purchaser of the Property at the non-judicial foreclosure sale is vested with all right, title, and interest to the Property.

After the court entered judgment for the Bank, Avinger paid the amounts due under the Popes' home equity loan. The record is not specific, but Avinger swore that the amount paid exceeded the amount held in the registry of the court.[1]

Then, the Pope Children intervened in this case requesting that the $61,232.32 in the court's registry be disbursed to them. Avinger subsequently intervened, claiming that she is entitled to the registry funds.

Avinger moved for summary judgment, and the Pope Children responded. The trial court granted Avinger's motion, and entered a final judgment that she is entitled to the registry funds. The Pope Children appeal from that judgment.

## II. ANALYSIS

### A. Issues One through Four: Did Avinger establish that she was entitled to the registry funds?

Yes, because the proceeds were home equity subject to the home equity lien that Avinger became entitled to by equitable subrogation. *See Patton v. Porterfield*, 411 S.W.3d 147, 159–61 (Tex. App.—Dallas 2013, pet. denied).

The Pope Children's first four issues argue that: (i) Avinger's interest is in the real property and the registry funds are personality to which she is not entitled; (ii) the funds are the Pope Children's exclusive personal property because they are the Popes' heirs, Avinger has no standing to claim the excess proceeds, and even if she did, her claim is time-barred; (iii) the Bank Suit had

---

[1] The Bank's delinquency notice shows the amount required to cure as of 6/20/2012 was $1,938.

–4–

nothing to do with Avinger's and the Pope Children's property rights in the registry funds; and (iv) awarding Avinger the registry funds provides her with "an unjust and impermissible windfall."

All of these issues challenge the summary judgment. As discussed below, we are not persuaded by these arguments.

### 1. Standard of Review

We review a trial court's decision to grant summary judgment de novo. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018). In a traditional motion for summary judgment, the movant "bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003) (citing TEX. R. CIV. P. 166a(c)). If the movant meets its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact that is sufficient to defeat the summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Knott*, 128 S.W.3d at 215.

When, as in this case, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216.

### 2. Standing

The Pope Children rely on Estates Code § 22.018(1) to argue that Avinger has no standing to assert a claim to the registry funds because she is not an heir, spouse, or creditor of the estate.

This argument, however, relies on an incomplete reading of the statute. Specifically, § 22.018(1) provides that:

> "Interested person" or "person interested" means:

> (1) an heir, devisee, spouse, creditor, **or any other having a property right in or claim in or against an estate** . . . .

*See* TEX. EST. CODE § 22.018(1) (emphasis added). In other words, an interested person is one who "has some legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefitted, or in some manner materially affected by [the proceeding]." *See In re Estate of York*, 951 S.W.2d 122, 126 (Tex. App.—Corpus Christi-Edinburg 1997, writ denied). Having paid the deficiency balance on the Popes' home equity loan, Avinger is at least a person interested in the Popes' estate.

Conversely, Avinger maintains that the Pope Children do not have standing because there was no administration of the Popes' estate or determination of heirship. We also reject this argument. At a minimum, the affidavits concerning the Popes' heirs establish that the Pope Children are also interested persons.

### 3. Equitable Subrogation

Avinger's summary judgment motion was premised on equitable subrogation. Equitable subrogation allows a party who discharges a lien on another's property to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor. *La Salle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007). There are two key elements to equitable subrogation: (i) the person whose debt was paid was primarily liable on the debt, and (ii) the claimant paid the debt involuntarily. *Bank of America v. Babu*, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011, pet. denied). Thus, when a third party pays in performance of a legal duty, equity will substitute them in place of the existing creditor as a matter of course—no agreement

between the parties is required. *See E.Y. Chambers & Co. v. Little*, 21 S.W.2d 17, 22 (Tex. App.—Eastland 1929, writ denied).

Avinger's summary judgement evidence includes a copy of the equity loan security instrument, the Bank's petition the Bank Suit, the Popes' death certificates, the Bank Suit's final judgment, and Avinger's affidavit. Her affidavit states that she had to pay the amounts due under the Popes' home equity loan after the Bank Suit to prevent losing the Property. She further says that the amount she had to pay exceeded the amount in the court's registry. Based on the preceding authorities, this evidence establishes Avinger's right to equitable subrogation.

The Pope Children did not raise any material fact issues about this evidence. Instead, they argued that: (i) the money in the court's registry is their personal property, (ii) the Bank Suit has nothing to do with whether Avinger is entitled to the funds, and (iii) it would be "unfair" to allow Avinger a "windfall."[2] Significantly, the Pope Children's summary judgment response also states that, "In paying off [the] mortgage lien, Avinger obtained a title clear of [the] lien to the Property."

The Pope Children's evidence included: (i) affidavits concerning the identity of the Popes' heirs; (ii) Avinger's discovery responses admitting she did not receive an assignment of interest in the Property or to any of the Popes' personal property, and (iii) a copy of the Constable's deed provided to Avinger when she purchased the Property.

The essence of the Pope Children's argument in the court below and on appeal is that the excess sale proceeds became personal property the minute the funds were deposited in the court's registry. To this end, they argue that Avinger's subrogated right can be no greater than the Bank's right and the Bank had no right to their personal property.

---

[2] Although the Pope Children also argue that Avinger's claim is time-barred because it is for personal property subject to a two-year statute of limitations, they adduced no summary judgment evidence to establish this defense as a matter of law. *See Pollard v. Hanschen*, 315 S.W.3d 636, 639 (Tex. App.—Dallas 2010, no pet.) (a defendant urging summary judgment on an affirmative defense is in the same position as a plaintiff urging summary judgment on a claim; he must plead and prove it).

The Pope Children offer no case authority for the proposition they assert. Instead, they rely on Estates Code sections 22.012 and 22.018. *See* TEX. EST. CODE §§ 22.012, 22.018. Neither provision, however, informs our analysis.

Section 22.012(1) provides that an estate "means a decedent's property, as that property: exists originally and as the property changes form by sale, reinvestment, or otherwise." *Id.* §22.012(1). Section 22.028(1) provides that "personal property involves an interest in . . . money." *Id.* §22.028(2). These provisions, however, alone or in combination, do not establish that the excess proceeds from the Property's sale morphed into the Pope Children's personal property when the funds were deposited.

The source of the registry funds further undermines the argument that the funds are simply personal property. The home equity loan is nonrecourse. Generally, a nonrecourse note has the effect of making the note payable out of a particular fund or source, namely, the proceeds of the collateral securing the note. *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Thus, while the maker of a nonrecourse note risks losing the collateral securing the note, he has no personal liability on the note. *Id.*

In *Patton v. Porterfield*, 411 S.W.3d 147, 159 (Tex. App.—Dallas 2013, pet. denied), we considered whether excess cash proceeds from a purchase money first lien foreclosure on homestead property collateralizing a home equity loan were subject to a junior home equity loan lien. We held that the home equity note's non-recourse nature meant that it was payable out of the collateral and the foreclosure sale proceeds could be delivered to the home equity loan's servicer. *Id.* at 160. In so doing, we said that "just as the cash proceeds of exempt property, including a homestead, retain an exempt character under certain circumstances, the cash proceeds from the sale of a homestead retain the character of a homestead for purposes of satisfying a home equity lien." *Id.* at 161.

Likewise, the registry funds here are distinct from ordinary cash held in a bank account; the funds are excess proceeds from the sale of property securing a nonrecourse home equity loan. Although now in the form of cash, the registry funds were generated by the real property collateral. As the Property's lienholder, the Bank would have been entitled to those funds had Avinger not paid the loan. Avinger now stands in the Bank's shoes as subrogee, and as the Pope Children noted, is entitled to the same rights the Bank once enjoyed.

The Pope Children also seem to suggest that Avinger has no subrogation rights because her payment was voluntary. We disagree.

"A payment is voluntary when the payor acts without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property." *Frymire Eng. Co., Inc. v. Jomar Intern., Ltd.*, 259 S.W.3d 140, 145 (Tex. 2008). As reflected in the Bank Suit judgment, all right, title, and interest in the Property vested in Avinger. The Property was encumbered by the Bank's lien. Thus, Avinger had to pay the Bank to preserve her interest in the Property. *See Conversion Props. v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999, pet. denied) (successful bidder at junior lien foreclosure sale takes title subject to prior liens).

Finally, without reference to legal authority, the Pope Children insist that awarding the funds to Avinger is "unfair," and a "windfall." We reject this argument. The summary judgment evidence establishes that Avinger is entitled to the registry funds because she satisfied the Bank lien on the Property that generated those funds. We find no legal or equitable rationale for characterizing Avinger's reimbursement as unfair.

Avinger's summary judgment evidence establishes that she is equitably subrogated to the Bank's rights, satisfied the Bank's lien, and is entitled to the registry funds. The Pope Children

failed to raise a material fact issue on Avinger's claim. Therefore, the trial court's judgment is not in error. We resolve the Pope Children's first, second, third, and fourth issues against them.

**B.  Fifth Issue:  Is the judgment for the homeowners' association in the underlying case void because the court lacked jurisdiction?**

The Pope Children's fifth issue argues that the Homeowners' Association's underlying judgment is void because the trial court lacked jurisdiction. Specifically, the Pope Children argue that the deceased Popes were never served and the Homeowners' Association's substituted service was based on "incomplete and incorrect factual representations" which violated the Popes' due process rights.[3] This is a collateral attack on that judgment. *See Dallas Cnty. Tax Collector v. Andolina*, 303 S.W.3d 926, 930 (Tex. App.—Dallas 2010, no pet.) (collateral attack is an attempt to avoid the effect of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief that the judgment currently bars).

Only a void judgment may be collaterally attacked. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). A judgment is void when the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012).

When attacked collaterally, a judgment is presumed valid. *Id.* at 273. The party challenging the judgment has the burden to show it is void. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994).

First, the Pope Children challenge the substituted service on the Popes because the affidavit supporting the substituted service motion did not mention that service had only been attempted

---

[3] We assume without deciding that the Pope Children are entitled to raise this argument on the deceased Popes' behalf.

once.  But the rule does not require multiple service attempts or a recitation that such attempts were made.  TEX. R. CIV. P 106.

Rule 106, which governs substituted service, provides in part that:

(b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service

(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

*Id.*

The process server's affidavit supporting the substituted service motion said that personal service had been attempted, but the Popes could not be served.  The server further said that he did not believe the Popes lived at that address anymore because the address was vacant.

The affidavit for the homeowners' association's attorney was also attached to the motion and stated that the address of record the Popes left with the homeowners' association was "5217 Spicewood Drive," (the same address the process server found vacant).

Thus, the motion requested and the court ordered that substituted service be affected by securing a copy of the citation and petition to the front door of the residence and by mailing a copy of the same to the Property's mailing address.  The record reflects that service was affected in accordance with the terms of the order authorizing substituted service.  *See Dolly v. Aethos Commc'n Sys. In*c., 10 S.W.3d 384, 388 (Tex. App.—Dallas 2000, no pet.) (substituted service requirements in order must be strictly followed).

–11–

Next, the Pope Children argue that the motion and affidavits were incomplete and inaccurate because neither mentioned that the Popes were deceased. But there is nothing in the record to establish that the homeowners' association or its counsel knew that fact.

Therefore, on this record, we conclude that the Pope Children have not established that fatally defective substituted service rendered the underlying proceeding (and thus the summary judgment) void and resolve their fifth issue against them.

### III. CONCLUSION

Having resolved all of the Pope Children's issues against them, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

180648F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KELLY POPE WORLEY AND KEVIN
POPE, Appellants

No. 05-18-00648-CV          V.

CHRYSANTHI AVINGER, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-00155-2015.
Opinion delivered by Justice Whitehill.
Justices Partida-Kipness and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee CHRYSANTHI AVINGER recover her costs of this appeal

from appellants

Judgment entered this 8th day of August, 2019.